## Philip Haverly v. Kaytec, Inc.

[738 A.2d 86]

No. 96-430

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 18, 1999

---

*Catherine Roberts-Suskin* of *Suskin & Roberts-Suskin, P.C.*, Montpelier, for Plaintiff-Appellant.

*Mark H. Scribner* of *Carroll & Scribner*, Burlington, for Defendant-Appellee.

*Brooke Pearson*, Montpelier, for Amicus Curiae Department of Employment and Training.

**Skoglund, J.** Plaintiff Philip Haverly appeals from a jury verdict for defendant Kaytec, Inc., claiming that the court erred by (1) admitting in evidence a statement made by him in an application for unemployment benefits, (2) denying a motion to amend his negligent supervision complaint, and (3) granting defendant's motion for judgment as a matter of law on plaintiff's negligent supervision claim. We affirm.

In April 1992, defendant hired plaintiff to work as an electrician's assistant in its Richford facility. Soon after starting the job, plaintiff complained to management about vapors and noise levels in the plant and subsequently filed a complaint with the Vermont Occupational Safety and Health Office (VOSHA). VOSHA sent an investigator, who discovered violations of its regulations. After the VOSHA inspection, plaintiff claimed that in retaliation for filing the complaint, his co-workers and supervisors began to harass, intimidate, and threaten him, and that these incidents frightened him to such an extent that he could no longer work for Kaytec. He left his job in October 1992.

Plaintiff filed this suit in October 1994, alleging he was constructively discharged in retaliation for calling VOSHA. Plaintiff pleaded two claims for recovery: (1) Kaytec violated 21 V.S.A. § 231 by discriminating and retaliating against him for complaining about

work place health and safety regulations, and (2) Kaytec negligently failed to prevent its employees from violating 21 V.S.A. § 231.

## I.

Plaintiff first argues that the court violated 21 V.S.A. § 1314(d)(1) by admitting into evidence a statement made by him to the Vermont Department of Employment and Training a year after he left Kaytec. The statement was made in support of an application for unemployment benefits from his subsequent employer, Electronic Hospital. In the statement, plaintiff referred to his job at Kaytec as a "good paying and secure job with . . . many benefits." Plaintiff claims that the statement was a privileged communication under the statute, and was therefore inadmissible.

Section 1314(d)(1) provides in relevant part:

> Except as otherwise provided in this chapter, *information* obtained from any employing unit or individual in the administration of this chapter, and determinations as to the benefit rights of any individual *shall be* held *confidential* and *shall not be disclosed or open to public inspection in any manner* revealing the individual's or employing unit's identity, *nor be admissible in evidence in any action or proceeding other than one arising out of this chapter. . . .*

21 V.S.A. § 1314(d)(1) (emphasis added). The purpose behind this section is to encourage full, free and honest reporting to the Vermont Department of Employment and Training by protecting the identities and statements of both employers and employees. Cf. *Hinojosa v. Joslyn Corp.*, 635 N.E.2d 546, 547 (Ill. App. Ct. 1994) (state laws prohibiting disclosure of unemployment compensation are meant to advance the administration of unemployment compensation laws by encouraging complete and accurate reporting from claimants and their employers); *Simpson v. Oil Transfer Corp.*, 75 F. Supp. 819, 822 (N.D.N.Y. 1948) (law may only be properly administered when interpreted so as to encourage full, free and truthful reports from both employer and employee).

Plaintiff cites to cases from other jurisdictions enforcing the confidentiality of unemployment information. These cases, unlike this case, involved either former employees or employers as defendants in litigation, who used the privilege as a shield against civil and criminal liability. See *id.* (holding that statements cannot be used as basis for

an action for libel); *Goggins v. Hoddes*, 265 A.2d 302 (D.C. 1970) (action for libel); *Hinojosa*, 635 N.E.2d at 547 (confirming that privilege applies to defendant employers as well as employees); *People v. Ellis*, 470 N.E.2d 524, 526 (Ill. App. Ct. 1984) (holding that statements cannot be used as basis for criminal liability); *Ohio Civil Rights Comm'n v. Campbell*, 345 N.E.2d 438, 440-42 (Ohio Ct. App. 1975) (holding that statements cannot be used in support of civil rights charges).

Here, plaintiff is not using the privilege as a defense to a civil or criminal charge, but as a means of precluding relevant evidence from being introduced in a proceeding initiated by him. To hold that such statements are protected under this situation would do nothing to further the purpose of full, free and honest reporting, but might enable litigants to unfairly secure more than they deserve by bringing collateral litigation. We hold that by bringing this action and putting his reasons for leaving Kaytec at issue, plaintiff waived any protection he may have had under 21 V.S.A. § 1314(d)(1) with respect to statements made by him to the Vermont Department of Employment and Training. See *Mattison v. Poulen*, 134 Vt. 158, 163, 353 A.2d 327, 329-30 (1976) (applying same principle to doctor/patient privilege under 12 V.S.A. § 1612). Plaintiff cannot in one breath claim protection from disclosure under 21 V.S.A. § 1314(d)(1) and in another bring an action for damages putting the content of those statements directly at issue. To do so would be to make the privilege not merely a shield, but a sword as well. See *State v. Valley*, 153 Vt. 380, 395, 571 A.2d 579, 586-87 (1989).

## II.

Plaintiff's final two arguments both pertain to his negligence claim. On the first day of trial, defendant brought a motion for judgment on the pleadings under V.R.C.P. 12(b)(6), requesting that the court dismiss plaintiff's negligence claim for failing to state a valid claim. Defendant argued that the Vermont Occupational Health and Safety Act preempted any common law right of action, including negligence, for "whistleblowing." Plaintiff contended that the negligent supervision claim was a tort claim, and not brought under VOSHA. Plaintiff did not elucidate how the negligent supervision claim was based on the common law. The court deferred ruling on defendant's motion to dismiss.

Midway through trial, the court sought clarification of plaintiff's negligent supervision claim. After reviewing plaintiff's pleadings and

requests for jury instructions, the court expressed its understanding that the negligent supervision action was based on an intentional or constructive discharge or discrimination claim, i.e., that management wrongfully allowed a violation of the VOSHA statute to occur. Counsel for plaintiff initially agreed with the court's description of the claim and stated that the negligent supervision "caused discrimination or discharge." The court, however, indicated that if the tort of negligent supervision was being raised, plaintiff must produce evidence of a wrong done to him that was different than the statutory violation alleged in Count I of his complaint. Plaintiff then pointed to evidence of verbal and physical abuse.[1] The court reminded counsel that verbal abuse is not a tort and that assault was not raised in plaintiff's complaint. The trial continued.

At the close of plaintiff's case, defendant reasserted its argument regarding plaintiff's negligence claim in a motion for judgment as a matter of law under V.R.C.P. 50(a). Plaintiff responded with a motion under V.R.C.P. 15(b) to amend the complaint to allege a battering by his supervisors, that the employer negligently allowed to happen. Defendant objected.

Plaintiff did not seek to amend the allegations that comprised Count II of the complaint but merely sought to add an averment to the body of the complaint claiming a battery. At trial, plaintiff's testimony concerning the offensive touching was as follows. With regard to the incident that occurred when plaintiff went into his supervisor's office to get ear plugs, plaintiff testified that the supervisor "came right towards me and he bumped me in the chest against the door that was right behind me. I reached up to the file cabinet, grabbed a handful of ear plugs and left." Plaintiff further testified that "it wasn't painful or anything, but it was scary." The second

---

[1] At the bench conference, the trial judge stated: "I just want to discuss the negligence count. The way I have it . . . the count would be negligently supervising, that the defendant negligently supervised management who intentionally constructively discharged or discriminated against the plaintiff. I don't like the way that sounds. . . . [I]t's putting a negligence layer on top of an intentional layer and . . . why don't we just simply get around that by saying that anything that management did is attributable to the defendant. . . . You seem to be implying that there was negligent supervision in that management allowed a violation of the statute." She went on in a dialogue with plaintiff's counsel to state "[Y]ou said negligent supervision but then you need to have a wrong. Okay. So you negligently supervise. Then what happens?" Plaintiff's counsel replied: "That negligent supervision caused discrimination . . . or discharge . . . ." To which the court replied, "Right. Caused a violation of statute . . . ." Finally, plaintiff's counsel attempted to broaden the alleged wrong by claiming that "management allowed . . . them to run roughshod" and mentions the physical and verbal abuse.

incident with this supervisor happened when plaintiff went to open a garage door for ventilation. He testified that the supervisor "put his hand on my shoulder, pushing me away." Plaintiff made no claim of harm resulting from this incident. Finally, plaintiff claimed that another supervisory employee "raised his hand at me" after plaintiff continued to reopen a garage door for ventilation that the other employee apparently wanted closed because of the cold weather. In this instance, there was no claim of any contact between the two men and no claim of any harm resulting.

In assessing plaintiff's motion to amend under V.R.C.P. 15(b), the court reasoned that, because the amendment came so late in the proceedings, it was unfair to require defendant to shift focus and defend a new claim for negligent supervision based on a battery. Further, the court opined that plaintiff had failed to prove that defendant knew or should have known about the violent propensities of the supervisor.[2] The court simultaneously denied plaintiff's motion to amend and granted defendant's motion for judgment as a matter of law on the negligent supervision claim as pleaded.

A denial of a motion to amend pleadings under V.R.C.P. 15 is reviewed only for an abuse of discretion. See *Brown v. Whitcomb*, 150 Vt. 106, 108-09, 550 A.2d 1, 3 (1988). Under V.R.C.P. 15(b), issues not raised by pleadings, but tried with the implied consent of the parties, are treated as if they had been raised by the pleadings. See V.R.C.P. 15(b). We have previously stated that, in order to find implied consent to an unpleaded issue, it must appear that both parties understood that evidence was introduced to prove the unpleaded issue. See *Vineyard Brands, Inc. v. Oak Knoll Cellar*, 155 Vt. 473, 485, 587 A.2d 77, 83-84 (1990); 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1493, at 19-20 (1990) (implied consent seems to depend on whether parties recognize that issue not presented by

---

[2]The dissent analyzes the trial court ruling on lack of employer knowledge of the supervisor's violent propensities under § 317 of the Restatement (Second) of Torts and suggests that § 317 is inapplicable to the situation. We agree and therefore do not address it. Instead, we analyze the trial court's ruling under § 213 of the Restatement (Second) of Agency and note that while § 213 contains no explicit knowledge requirement, the principal may be negligent if he has reason to know that the servant or other agent, because of his qualities, including incompetence because of his reckless or vicious disposition, is likely to harm others in view of the work or instrumentalities entrusted to him. See Restatement (Second) of Agency § 213 cmt. d (1958). This distinction is of no great moment under our view of the case. We see the issue to be not what constitutes a valid claim of negligent supervision, but rather whether a claim of negligent supervision based on an alleged battery was pleaded and tried by plaintiff.

pleadings entered case at trial; if not, there is no consent and amendment not allowed).

A review of the record indicates that defendant did not interpret, nor should it reasonably have interpreted, plaintiff's Count II to set forth a claim of negligent supervision by defendant of its supervisors on the basis of battery. During the presentation of his case at trial, plaintiff continued to assert that the negligent supervision claim resulted in discrimination, not a touching. In response to plaintiff's motion to amend, defendant argued that if, in fact, plaintiff had tried the claim of negligent supervision outside the context of 21 V.S.A. § 231 during trial, a claim based on a battery, defendant would have retained experts and called witnesses to assess whether plaintiff had suffered any emotional or physical harm. Further, even with the offered amendment to include a battery, defendant credibly professed confusion as to what plaintiff was pleading in Count II.

■ Under the circumstances, defendant did not impliedly consent to try the claim of negligent supervision resulting in a battery. The mere mention in the complaint of some of the alleged retaliatory actions of the co-workers that plaintiff claimed resulted in a constructive discharge was insufficient to put defendant on notice that the claim of negligent supervision was based on anything other than a violation of 21 V.S.A. § 231. Given the early notice by the court of the tenuous validity of Count II, plaintiff's continuing reliance on a claim of discrimination as the basis of Count II, the timing of the motion to amend, and the fact that only with the motion to amend did plaintiff clearly articulate a claim for negligent supervision based on a resulting battery, it was not an abuse of discretion to deny the motion to amend the complaint.

### III.

Plaintiff next contends that the court erred in granting defendant's motion for judgment as a matter of law on plaintiff's negligent supervision claim.

■ A claim of negligent supervision is addressed by § 213 of the Restatement (Second) of Agency, which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving

risk of harm to others: in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). Pursuant to § 213, liability exists only if all the requirements of an action of tort for negligence exist. See *Brueckner v. Norwich Univ.*, 169 Vt. 118, 126-27, 730 A.2d 1086, 1093 (1999). In the case at bar, plaintiff had to prove that: (1) the employer had a duty to forbid or prevent negligent or other tortious conduct by persons upon its premises; (2) the employer breached that duty; (3) such a breach was the proximate cause of plaintiff's injury; and (4) there was actual loss or damage as a result of the injury.

Thus, the tort of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee. A wrongful act may well be a tort, but not necessarily. If the act of the employee is contrary to a fundamental and well-defined public policy as evidenced by existing statutory law, it is sufficient to sustain the cause of action. See *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 239 (Wis. 1998). In the case at bar, based on the pleadings, the wrongful act underlying the claim of negligent supervision is discrimination and retaliation resulting in constructive discharge. Like the trial judge, we fail to see a distinction between Count I and Count II.

In Count I, plaintiff claimed that the actions of defendant, by and through the actions of the co-workers, were in retaliation for plaintiff's protected activities and thus a violation of 21 V.S.A. § 231(a). In Count II, plaintiff alleged that the employer had a duty to comply with the health and safety laws of the State of Vermont, including the prohibition against discrimination of an employee who files a VOSHA complaint, and that the employer breached that duty by failing to supervise its employees to prevent "the abusive, hostile and discriminatory conduct of its employees towards Plaintiff specified in Count I above." As a result of "the negligence and discriminatory conduct of the Defendant," plaintiff claimed damages, "including loss of back and front pay, lost employment opportunities, pain and suffering, emotional and physical distress, anguish and anxiety." Thus, plaintiff's claim in Count II is that Kaytec negligently failed to supervise its employees who retaliated against plaintiff for making a complaint to VOSHA, causing plaintiff to be constructively discharged and suffer damages.

The trial court ruled that, without an amendment to the cause of action in Count II alleging negligent supervision resulting in a battery, Count I — wherein plaintiff claimed that defendant discriminated against him in violation of 21 V.S.A. § 231(a) — subsumed Count II. We agree. Because Count II presented the same claim of discrimination as set forth in Count I, it was not error for the court to grant judgment as a matter of law on Count II. See V.R.C.P. 50(a) (court may grant motion for judgment as a matter of law against party if claim cannot be maintained under controlling law.)

Nor was the claim of damages, including "pain and suffering, emotional and physical distress, anguish and anxiety," sufficient to infuse Count II with an action premised upon a battery. First, the court agreed that damages for emotional distress were available to plaintiff under Count I, and so charged the jury. Second, as noted above, there was no evidence of any pain or suffering, physical or emotional, as a result of any physical battery against plaintiff. Plaintiff's testimony of alleged retaliatory actions taken against him by co-workers focused primarily on numerous incidents of ostracism, verbal abuse and ridicule. The alleged batteries were obviously not the factual centerpiece of the claim for relief for constructive discharge under 21 V.S.A. § 231. Viewing the evidence as a whole, the incidents of offensive touching were offered to support the claim of discrimination, not as evidence of a battery.

The complaint did not plead, nor did the evidence support, a claim of negligent supervision based on an underlying tort of battery. There was only one cause of action properly pleaded and actually litigated, and it was described in Count I.

*Affirmed.*

**Johnson, J.,** dissenting. Today the majority affirms a decision of the trial court that an employee assaulted in the workplace by his supervisor cannot sustain a claim of negligent supervision because the corporate employer purportedly did not know of the supervisor's propensity for misconduct. The trial court's decision flies in the face of both the facts and the law. The majority avoids engaging with the trial court's reasoning by raising a red herring: the supposed inability of plaintiff to amend his complaint to include particular allegations of battery. Plaintiff did not need to amend his complaint, however, to have his claim presented to the jury, and the trial court's rationale for not allowing the claim to go to the jury was error. Therefore, I respectfully dissent.

The majority affirms the trial court's decision to grant judgment as a matter of law on plaintiff's negligent supervision claim, reasoning that (1) plaintiff's motion to amend his complaint came so late in the proceedings that to grant it would have unfairly prejudiced defendant and (2) plaintiff did not plead or present evidence to support a claim of negligent supervision based on the torts of assault and battery. The result reached by the majority is contradicted by both the facts and the law relevant to this case. First, whether plaintiff was permitted to amend his complaint is irrelevant to the question of whether plaintiff's negligent supervision claim should have been disposed of as a matter of law. Second, contrary to the conclusions of the trial court, plaintiff did present evidence that defendant was aware of the assailant's propensity for violence, and this evidence was sufficient to allow consideration of his negligent supervision claim by the jury. Plaintiff presented evidence that the vice-president of Kaytec had received numerous complaints about the assailant's behavior. Plaintiff also presented evidence that supervisory employees were aware of the assailant's ill-temper, and their knowledge is imputed to the employer, defendant Kaytec. Third, in a cause of action based on negligent supervision, a plaintiff is not required to show that an employer had knowledge of an employee's propensity for misconduct; rather, a plaintiff may show that an employer was negligent in its duty to supervise the workplace. The trial court erred in applying the knowledge requirement.

## I.

The complaint amendment issue, focused on by the majority, is a red herring that does not resolve this appeal or even help its resolution. The amendment, whether granted or not, is irrelevant to whether the case should have reached the jury on a negligent supervision theory.

The complaint allegations at the center of this appeal stated:

> 27. Defendant negligently failed to supervise its employees to prevent or to take such action to stop the abusive, hostile and discriminatory conduct of its employees toward plaintiff
> . . .
>
> 28. As a result of the negligence and discriminatory conduct of the defendant, plaintiff suffered damages including loss of back and front pay, lost employment opportunities, pain and suffering, emotional and physical distress, anguish and anxiety.

*Plaintiff never attempted to amend, expand or supplement this allegation.* The complaint amendment focused on by the majority related solely to the statement of alleged facts that opens the complaint before the specific counts that contain the claims for relief. Included in these factual statements are allegations that plaintiff's supervisor, Duane Jewett, ridiculed and humiliated plaintiff, that Jewett physically threatened plaintiff by raising a closed fist and screaming in a menacing manner, that Jewett screamed profanities at plaintiff, and that the production manager threatened plaintiff. The proposed amendment would have added that on at least three occasions plaintiff was physically battered by Jewett and the production manager. By the time that the amendment was proposed, evidence of battery had already been admitted.

When he framed his complaint for negligent supervision, plaintiff was obligated to provide "a short and plain statement of the claim showing that [he] is entitled to relief." V.R.C.P. 8(a). This requirement is "the very essence of modern notice pleading," *Lemnah v. American Breeders Serv., Inc.,* 144 Vt. 568, 577, 482 A.2d 700, 705 (1984), and "does not require a specific and detailed statement of facts constituting the cause of action. Rather, the test of whether a particular pleading is sufficient under Rule 8(a) is whether it gives fair notice of the claim and the grounds upon which it rests." *Levinsky v. Diamond,* 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982). In other words, "sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery." *Mancini v. Mancini,* 136 Vt. 231, 234, 388 A.2d 414, 416 (1978) (citation omitted). To satisfy Rule 8(a), a claim of negligence should allege the traditional elements of duty, breach, causation and harm, but they may be pleaded with "simplicity and generality." 5 C. Wright and A. Miller, Federal Practice and Procedure § 1249, at 227-28 (1969) (construing identical federal rule).

Under notice pleading rules, the addition of another unnecessary factual allegation cannot make or break a complaint. Here plaintiff pleaded negligent supervision that failed to prevent abusive and hostile acts that resulted in pain and suffering. These allegations were certainly broad enough to cover physical touchings that resulted in pain and suffering and put defendant on notice from the outset that plaintiff suffered the kind of injury the evidence eventually disclosed. The allegations were not limited, as the majority states, to a negligent supervision claim under the VOSHA statute. Defendant claims it

would have hired experts had it known that plaintiff claimed to have suffered emotional or physical harm. I find this claim incredible. From the outset, plaintiff alleged that he suffered such harm.

If I understand the majority's position, it is that plaintiff failed to identify the specific tortious conduct committed by the employee which gave rise to defendant's liability. I find nothing in the letter or spirit of our notice pleading rules that requires the pleader to identify specifically the subsidiary tort. Indeed, in this case, plaintiff identified no employee tort by name; therefore, under the majority's theory the case should have been dismissed long before the trial. More importantly, the liability theory relied upon by the trial court does not require that the employee commit a specific tort. It requires only that the employee intentionally harm others or conduct himself as to create an unreasonable risk of bodily harm to others. See Restatement (Second) of Torts § 317 (1965).

Like the majority, I find no error in the denial of the motion to amend the complaint, because I believe such a motion was unnecessary. It was error, however, to fail to allow plaintiff's case on negligent supervision to go to the jury on the evidence submitted.

## II.

Despite the fact that the majority declines to address the substance of plaintiff's negligent supervision claim, the majority nonetheless implicitly adopts the second element of the trial court's reasoning: that defendant could not be found liable for negligent supervision because plaintiff failed to present evidence that defendant possessed actual or constructive knowledge of its employee's propensity for misconduct. From this I must also dissent.

The knowledge of a corporation's supervisory employees is imputed to the corporation for purposes of finding negligence under § 317 of the Restatement (Second) of Torts. See *Davis v. United States Steel Corp.*, 779 F.2d 209, 212 (4th Cir. 1985) (once supervisor becomes aware of misconduct, knowledge automatically imputed to employer). Defendant, as a corporation, cannot possess knowledge itself; rather, a corporation "knows" only through its agents. It is for this reason that, in a corporate environment, the knowledge of supervisory employees is automatically imputed to their employer, the corporation. In the absence of such a rule, corporations could render themselves frighteningly unaccountable simply by virtue of willful ignorance and multiple levels of managerial bureaucracy.

In this case, the fact that the supervisory employees were the perpetrators does not prevent their knowledge of their own miscon-

duct from being imputed to the corporation. To hold otherwise, as the trial court did, is to create an inexplicable gap in liability. Under such a rule, supervisors who observe the misconduct of nonsupervisory employees are responsible for taking corrective action, see *id.* (supervisor has responsibility flowing from employment as supervisor to take action upon observing harassment of employee by co-employee), but when the supervisors commit the misconduct themselves, the law ignores the wrongdoing that has occurred. This creates a perverse scheme in which an employer is least responsible for monitoring the conduct of those persons who have the most power over other employees.

It is obvious that supervisors engaged in misconduct will have little incentive to report their own misdeeds. This, however, is not a risk that should be born by the victim of the misconduct. Rather, the employer, who chooses to cloak particular individuals in supervisory authority, must bear the risk of their being ill-suited for the responsibility that accompanies that authority.

Furthermore, in this case, episodes of the alleged misconduct (and hence the propensity for such misconduct) were also observed by a third-party supervisory employee. James Hemond was plaintiff's immediate supervisor. He observed Jewett bullying employees and threatening plaintiff in particular. Because Hemond was a supervisory employee, his knowledge of this behavior is imputed to the corporation. Thus, there was evidence that defendant Kaytec had knowledge of Jewett's propensity for misconduct, and there was sufficient evidence to proceed to the jury on the issue of defendant Kaytec's negligence.

The trial court also erred in concluding that plaintiff had to show that defendant Kaytec was aware of actual incidents of past violence by Jewett. Under § 317, knowledge of Jewett's ill-temper was sufficient to trigger Kaytec's duty. See *Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 482, 601 A.2d 978, 982 (1991) (plaintiff need not show that employer knew of specific past acts of negligence on part of employee, only a predisposition to careless behavior with respect to instrumentalities made available to employee by employer).

In addition, plaintiff was not even required to show that Kaytec had knowledge of its employee's propensity for misconduct to establish a prima facie case of negligent supervision. The trial court erroneously treats plaintiff's claim as being exclusively governed by § 317 of the Restatement (Second) of Torts, which deals with a master's duty to control the conduct of a servant when the servant is on the premises

of the master but acting outside the scope of employment. Section 317 requires that the master know that he or she has the ability to control the servant and that there is a need for such control. See Restatement (Second) of Torts § 317 (1965).

Plaintiff, however, termed his cause of action "negligent supervision," which is addressed by § 213 of the Restatement (Second) of Agency and is defined as follows:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity . . . or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). In contrast to a cause of action based on § 317, negligent supervision contains no explicit knowledge requirement. Negligent supervision is a form of direct liability* stemming from the employer's duty to supervise the activities of the workplace in an effective manner. The prerequisites for a negligent supervision claim are (1) that the defendant conducts an activity through agents, and (2) that the defendant is negligent or reckless in fulfilling the supervisory duty. "One who engages in an enterprise is under a duty to anticipate and to guard against the human traits of his employees which unless regulated are likely to harm others." § 213 cmt. g. Delegation of the duty to supervise does not eliminate liability. See § 213 cmt. j.

---

*Negligent supervision is distinct from respondeat superior liability, though the two may co-exist. See § 213 cmt. h. Because negligent supervision is not a form of vicarious liability, there does not need to be a finding that the tortfeasor was acting within the scope of employment. See § 213 cmt. a ("The rule stated in this Section is not based upon any rule of the law of principal and agent . . . ."). This is made clear by the fact that negligence may be found in connection with the activities of persons "whether or not [the employer's] servants or agents" who commit a tort "upon premises or with instrumentalities under [the employer's] control." § 213.

Though plaintiff in this case did not argue respondeat superior liability, evidence was submitted that could have supported this theory of liability. Acts may be within the scope of employment even if they are criminal or tortious as long as the conduct is foreseeable. See Restatement (Second) of Agency § 231 and cmt. a. Additionally, an employer may be found liable for the unauthorized tortious conduct of an employee if the conduct is committed in furtherance of the interests of the employer. See § 216 and cmt. a. When a supervisor observes misconduct and does nothing to correct it, the factfinder may assume that the conduct is not contrary to the interests of the employer. See *Davis*, 779 F.2d at 211.

In this case, Mitchell Coleman, the vice-president of Kaytec, testified that he was too busy to supervise the goings-on of the factory floor himself, and so he entrusted Jewett, among others, to be his "eyes and ears" on the factory floor. This act of delegation did not relieve the corporation as an entity of its duty to supervise the activities of workplace effectively. Put another way, a corporation's vice-president should not be able to eliminate the corporation's duty to supervise simply by delegating the duty to unqualified, lower-level supervisors. It is both ironic and unjust that Coleman's negligence in delegating the supervisory function excuses Kaytec from liability for that negligence, and yet this is the result the majority reaches today.

Plaintiff did not need to amend his complaint for there to be sufficient evidence to go to the jury on either the § 317 or § 213 theories of liability, and therefore judgment as a matter of law on plaintiff's negligent supervision claim was error.

I am authorized to state that Justice Dooley joins in this dissent.