*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-130

AUGUST TERM, 2015

| | | |
|---|---|---|
| Stephen and Margaret Conant | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Chris Khamnei | } | DOCKET NO. 685-6-12 Cncv |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Defendant in this boundary dispute between adjoining landowners appeals pro se from a superior court judgment in favor of plaintiffs. Defendant contends the court erred in: (1) denying a motion to amend; (2) finding plaintiffs' survey to be accurate; (3) concluding that defendant had trespassed on plaintiffs' property; (4) disregarding defendant's measurements of the property; and (5) constraining the independent surveyor appointed by the court as a special master. We affirm.

Plaintiffs and defendant own adjoining properties on St. Paul Street in the City of Burlington. Both parties also own adjacent properties on Pine Street to the rear of the St. Paul Street properties. Plaintiffs' St. Paul Street property, which is vacant, lies just to the south of defendant's property, which contains a multi-unit residential building. In June 2012, plaintiffs filed a complaint against defendant for declaratory and injunctive relief, seeking a declaration as to the parties' relative rights to a driveway lying between their St. Paul Street properties, and an order allowing them to remove a line of wooden posts located in the driveway on what they claimed was their side of the property. Plaintiffs also sought damages for defendant's alleged trespass by parking, dumping snow, and—as later shown at trial—re-grading and dumping fill onto plaintiffs' property. Plaintiffs relied on a survey of the property that they had commissioned in 2003 in connection with their purchase of the property, the so-called Robenstein survey. The surveyor had previously done surveys of the area in 1986 and 1993.

In December 2012, the trial court granted partial summary judgment in favor of plaintiffs. The court ruled that there was a genuine dispute over the location of the boundary line in the driveway—defendant claiming that it was two feet further south, or closer to plaintiffs' property than the boundary line identified on the survey—which precluded summary judgment on that issue. Nevertheless, even accepting defendant's line as true, the court found that all of the evidence showed that the wooden posts were on plaintiffs' property and thus authorized plaintiffs to remove the posts.

Following a two-day bench trial, the court issued a written decision and judgment in April 2014. The court determined that the 1993 Robenstein survey was generally accurate in all respects, except with respect to its location of the southeastern corner of defendant's property, which the court found was not accurate or reliable, and appointed an independent licensed surveyor to set out and establish the boundary line between the parties' St. Paul Street properties "using the 1993 Robenstein Canales survey plat for all necessary pin locations and lot corners, except for the purported location of the southeast corner of [defendant's] lot." The court also found that defendant had trespassed onto plaintiffs' property by engaging contractors who repeatedly went onto plaintiffs' property for re-grading and landscaping operations, and awarded damages of $2000. The special master's report was filed with the court in December 2014, the court held a hearing on the matter in February 15, and shortly thereafter the court issued an order and final judgment adopting the report and setting the common boundary between the parties' St. Paul Street properties as determined therein. This appeal by defendant followed.

Defendant first contends the trial court erred in denying a motion to amend his answer to raise a counterclaim of adverse possession. The background to the contention is as follows. Plaintiffs filed their complaint for declaratory and injunctive relief in June 2012. Although defendant's answer did not expressly plead adverse possession, defendant asserts that it was tacitly raised. He notes, in this regard, that plaintiffs' complaint itself stated that defendant had earlier claimed ownership through "adverse possession," and defendant's answer alleged that plaintiffs' allegations were "not consistent with the physical use of the property."

In December 2012, the court issued a ruling on plaintiffs' motion for summary judgment. The court concluded that a genuine issue of material fact remained over the location of the boundary line, but also concluded that plaintiffs were entitled to remove a line of wooden posts located in the driveway because "all of the evidence show[ed] that the posts are on [plaintiffs'] property." While the court observed that defendant "claims ownership of the land lying northerly of and including the wooden posts because this is 'consistent with the historical use of the property,' " it further observed that defendant "has not brought an adverse possession claim or introduced any evidence to support such a claim."

In March 2013, the court issued an order requiring that all discovery be completed and the case ready for trial within ninety days, or late June 2013. After a number of motions to compel discovery and an order granting plaintiffs' motion to compel, the court issued an order in July 2013, granting plaintiffs' motion for sanctions, ordering defendant to reimburse plaintiffs for certain attorney's fees, and precluding defendant from calling an expert at trial. Shortly thereafter, defendant moved to amend his answer to add a claim for adverse possession; defendant did not seek to add any factual allegations, but merely to add an averment claiming adverse possession. The court denied the motion, recalling its prior order setting a deadline for discovery and trial in late June, and finding that the amendment would be "prejudicial to [plaintiffs] and futile, given the court's ruling on summary judgment." The court stated that the motion to amend "should have been filed long ago."

We review the denial of a motion to amend "only for an abuse of discretion." Haverly v. Kaytec, Inc., 169 Vt. 350, 355 (1999). We have cautioned, however, that "trial courts must be mindful of the Vermont tradition of liberally allowing amendments where there is not prejudice

2

to the other party." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1. In addition to prejudice to the opposing party, factors that may support the denial of a motion to amend are undue delay, bad faith, and futility of amendment. Id.

Assessed in light of these standards, we find no abuse of discretion. By his own account, defendant was aware of, and indeed had effectively pled, a claim adverse possession as early as his answer to the complaint in June 2012. He was informed by the court's ruling in December 2012, however, that the court did not believe that he had either pled or produced any evidence to support a claim of adverse possession. Yet not until the discovery deadline had passed, more than six months after the court's ruling in December 2012, did defendant file a motion to amend, and the motion contained no new factual allegations. Given the delay, and the prejudice to plaintiffs of having to refocus after the close of discovery on issues relating to the elements of adverse possession, we find no basis to conclude that the court abused its discretion in denying the motion.

Defendant further contends the court's findings concerning the accuracy of plaintiffs' surveys are unsupported in two respects. First, defendant asserts that the finding concerning the accuracy of the location of the northeastern corner of his lot—Point A on the surveys—is erroneous because it was located by measuring a certain distance north from a pin at the southeastern corner—Point B on the surveys. Because the court found that the pin placement for Point B was not reliable, defendant contends that the placement for Point A must also be inaccurate. Plaintiffs' surveyor testified, however, that he located the points on the survey by measuring from "both directions," i.e., south to north as well as north to south. He explained that he carefully reviewed the deeds for the properties to the north of defendant's lot, located the landmarks, and "measured down in a southerly direction" all the way through to defendant's property. Thus, the evidence was sufficient to support the court's finding. See Obolensky v. Trombley, 2015 VT 34, ¶ 27 (noting that it is province of trial court to weigh evidence, and that its findings will not be disturbed, even if there are inconsistencies or substantial evidence to contrary, unless there is no credible evidence to support them).

Defendant also claims that the court erred by finding the length of the western boundary of the property to be fifty-eight feet. He maintains the finding is inconsistent with a description in an 1889 deed to the property describing the western boundary as fifty-nine feet. The trial court was unpersuaded, noting that the 1889 deed and all of the deeds thereafter described the property's eastern boundary on St. Paul Street as fifty-eight feet in length and that all of the evidence indicated the parcel was intended to be rectangular, that the digit "9" was "suspect, and appear[ed] as if it was altered," and that none of the subsequent deeds to the property contained the reference to the length of the western boundary, stating only that the lot had a frontage on St Paul Street of fifty-eight feet and a depth of 173 feet.[1] The evidence was sufficient to support the finding.

---

[1] The court did not, as defendant suggests, find that the deed had been altered, but only that it was suspicious. Although the court mistakenly observed in a footnote that the City's land-record custodian testified that the digit appeared to have been altered, the court was

3

Defendant next contends the court's findings that he trespassed by conducting re-grading and landscaping operations on plaintiffs' property without permission were unsupported because the boundaries were in dispute, and because the parties had agreed that the graded fill could remain on plaintiffs' property. The court also found, however, that defendant knew that the work was proceeding on plaintiffs' property, observing that defendant was "contrite" when confronted with the trespass, "acknowledged his workers had been at least over-zealous," and agreed to "re-grade the area on [p]laintiffs' property." Defendant has not challenged these findings, which were supported by the evidence, and which in turn support the finding of trespass. Furthermore, the trial court found that defendant's testimony about the alleged agreement was not credible. See Obolensky, 2015 VT 34, ¶ 27 ("[W]e emphasize that it is the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." (quotation omitted)). Accordingly, we discern no basis to disturb the findings.[2]

Defendant further asserts that the court erred in disregarding evidence of measurements of the property taken by defendant. Over objection, the court allowed defendant to offer testimony and photographs concerning measurements of the property made by defendant with the help of his attorney and a third party; the measurements were made with the use of a tape measure and a string tied between two ski poles placed at certain metal rods. Whether the court admitted this evidence, or merely allowed defendant to make a record of what its proffered evidence would be if admitted is not entirely clear. In its decision, the court stated that it would not make any findings or further discuss defendant's measurement evidence "as it is really not just 'fact' evidence but rather expert or opinion evidence which was precluded by the court." However, the court also stated that "these counter-measurements would have no utility" and were ineffective to rebut the surveyor's expert testimony and the evidence contained in the surveys, which the court found to be generally accurate. We need not determine whether the court declined to admit this evidence, and whether, if so, the court erred. Even if the court did decline to admit the evidence, and even if it erred in doing so—a question we do not decide— any error would be harmless. The court's findings were clear that even if the evidence were admitted, the court would assign it no weight. The weight, if any, to be accorded the evidence was entirely within the court's discretion, and we find no basis to conclude that the court abused its discretion in concluding that the handheld tape measurements were insufficient to overcome the expert evidence. Id.

Finally, defendant contends the court erred in "constraining" the court-appointed master by directing him to rely in part on the 1993 survey, which the court had found to be accurate in most respects, to locate the still-unresolved southeast corner of defendant's lot and to use that finding to determine the boundary line between the parties' properties. Having determined that

fundamentally relying on its own observation that, to the lay observer, the "9" appeared to be "in a somewhat different script and somewhat darker that the rest of the document."

[2] In his reply brief, defendant also claims for the first time that the court erroneously "intertwine[d]" two alleged trespasses that occurred at two different times, one of which allegedly occurred several years earlier with plaintiffs' permission. We do not address arguments raised for the first time in a reply brief. In re Wal-Mart Stores, Inc., 167 Vt. 75, 86 (1997).

the court's findings concerning the accuracy of the survey were supported by the evidence, we find no error.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice