Filed 12/08/25

**VERMONT SUPERIOR COURT**
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03712

| **Margaret Murray v. City of Barre** |
| --- |

## ENTRY REGARDING MOTION

Title:      Motion to Amend Complaint  (Motion: 6)
Filer:      Andrew B. Delaney
Filed Date:  October 27, 2025

The motion is DENIED.

The present motion concerns Plaintiff Margaret Murray's request to amend her complaint after the close of discovery to add a count of negligent supervision against the Defendant City of Barre.  The City opposes this motion to amend.  For the reasons articulated below, particularly the issues of futility and prejudice of the amendment, the motion is **Denied.**

The present matter involves an automobile accident.  Plaintiff alleges that a City of Barre snowplow truck backed into her vehicle and caused damage and injuries.  Plaintiff has alleged negligence on the part of the driver and has sued the City of Barre as required under 24 V.S.A. § 901a.[1]

The City has defended against this claim, but it has admitted that the operator was acting under the City's authority and at the City's direction.  As such, the City has effectively conceded the issue of respondeat superior in this case.  See *Brueckner v. Norwich University*, 169 Vt. 118, 122–23 (1999) (discussing the doctrine of respondeat superior).

Plaintiff seeks to amend her complaint to add a claim of negligent supervision directly against the City of Barre.  Plaintiff in her amended complaint contends that the City (1) did not adopt a written policies, protocols, or formal training for drivers on safe turnarounds, highway backing, or minimizing dangerous maneuvers; (2) failed to provide supervision to its drivers; and

---

[1] Under Section 901a, injury or damages to person or property resulting from the acts or omissions of a municipal employee "shall lie against the municipality . . ."  24 V.S.A. § 901a(b).  Such actions must be filed against the municipality, which waives any defenses other than those that would be available to the employee.  *Id*. at § 901a(c).  This statute provides both indemnification and duty to defend for the employee.  *Id*. § 901a(d).

(3) failed to do so despite knowledge of these routines and safer alternatives. (Pltf. Mot. to Amend at 4.)

A claim for negligent supervision falls under the category of direct liability. *Brueckner*, 169 Vt. at 126 (identifying negligent supervision as a form of direct liability). The elements of this tort require a plaintiff to prove that an employer held some supervisory role over an employee; that the employer breached its duty to properly control or supervise the employee; and that as a result of this breach, the employee committed a negligent or wrongful act in the course of their employment that resulted in an injury or damage. *Haverly v. Kaytec, Inc.*, 169 Vt. 350, 356–57 (1999) (listing the elements of a negligent supervision claim). The failure to control must be the proximate cause of the employee's actions, but plaintiff must still show that the employee committed a negligent or wrongful action. *Id*. In other words, separate and apart from the breach of any duty to supervise or control, plaintiff must still establish that the employee, himself or herself, committed a negligent or wrongful act. *Haverly*, 169 Vt. at 357.

The distinction between vicarious liability and direct liability claims centers entirely on what a plaintiff must prove to establish an employer's liability. See Restatement (Second) of Agency § 213 (1958) (describing direct liability for a principal if it independently fails to supervise an agent engaged in a dangerous activity). As the Vermont Supreme Court has noted, direct liability claims carry heightened elements of proof. *Bruckner*, 169 Vt. at 126 (noting that a plaintiff must establish employer negligence as well as the underlying employee negligence).

The purpose of vicarious and direct liability is to provide plaintiffs with different avenues to hold an employer liable when they bear some responsibility for the employee's tortious actions. *R.A. Mincer*, *The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior*, 10 Wyo. L. Rev. 229, 232–33 (2010). As one commentator summarized, these theories of direct liability "are intended to provide an alternate means of recovery against the master for harm caused by his servant when respondeat superior or agency theories might not suffice." *Id*. at 233; see also *S. Howton*, *Passing the Buck: How Employers Suppress Evidence and Reduce Liability Through the Admission Rule*, 76 Baylor L. Rev. 659, 665 (2024) ("The difference between vicarious liability and direct liability is that, with direct liability, a tortfeasor is held liable based on the culpability of its own actions and not purely the relationship between the parties.").

What direct and vicarious liability does not distinguish between, in most cases, is what damages may be sought against the employer. *Id*. If an employer is liable under a theory of vicarious liability, the damages that plaintiff may seek are not materially different than what would be available if plaintiff proved direct liability. *Id*. This is because a plaintiff seeks compensatory damages for his or her injuries that have arisen from the employee's negligence, and if the actions were within the employee's scope of employment, then the employer is treated as a joint tortfeasor, just as they would be treated in a direct liability case. *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 29 (1999) (noting that vicarious liability makes an employer a joint tortfeasor against whom a whole judgment may be asserted).

Consistent with this thinking, a plurality of states and federal jurisdictions have ruled that if an employer in a motor vehicle accident concedes that the employee was acting within the scope of his or her employment, effectively conceding respondeat superior, then plaintiff may not also bring a claim for negligent supervision. *Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1318 (M.D. Ala. 2003) (collecting cases); *McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995); see also 76 Baylor L. Rev. at 683 (noting that 22 jurisdictions have adopted the rule while 18 have rejected it in some form). This has become known by some commentators as the Admission Rule. 76 Baylor L. Rev. at 667.

More recently, a number of jurisdictions have begun rejecting any type of blanket Admission Rule. See, e.g., *Ramon v. Nebo Sch. Dist.*, 493 P.3d 613, 618 (Utah 2021). The reasoning in these decisions has generally been three-fold. First, any blanket rejection of a direct liability claim following a respondeat superior admission fails to take into account the fact that they are two separate claims and that a plaintiff has a right to control his or her own complaint. *Id*. Second, a stated purpose for the Admission Rule, to avoid unnecessary and prejudicial evidence confusing an employer's liability with the employee's can be better addressed through the rules of evidence, particularly 403. *Id*. at 620. Third, modern comparative negligence statutes require juries to consider the negligence of all parties to determine liability. *Id*.

Vermont has neither adopted nor rejected the Respondeat Superior Admission Rule. In its brief, the City urges this Court to join the plurality of states that have adopted it. The City argues that this is only sensible given that the issue of liability has been resolved. Plaintiff

opposes the adoption of the Rule for many of the same reasons articulated in *Ramon*, although it does not suggest that comparative negligence is an issue in the present case.

In reviewing the case law and reasoning behind the Admission Rule, this Court finds that the wholesale adoption of this doctrine is not warranted in this case. Instead, the Court finds that there are specific features of municipal liability, indemnity, and immunity that make the amendments both futile and prejudicial.

As a starting point, it is important to note that the City's admission to vicarious liability in this case is not entirely voluntary. The provisions of 24 V.S.A. § 901a require municipalities to provide both defense and indemnification for any employee sued for negligence within the scope of his or her employment. 24 V.S.A. § 901a(d)(1). Under these provisions, the municipality effectively steps into the shoes of the employee. *Civetti v. Turner*, 2020 VT 23, ¶¶ 14, 15 (interpreting the provisions of Section 901a(c) to constitute a waiver of municipal immunity). The language of Section 901a(b) goes further and makes an action against the municipality the "exclusive right of action" for anyone injured or suffering damages as the result of the negligence of a municipal employee arising from the scope of his or her employment. 24 V.S.A. § 901a(b).

Collectively, these provisions mean that a plaintiff must bring an action solely against the municipality, and if the actions fit within the scope of his or her employment, then liability applies, and no action may be brought against the individual employee or their estate. 24 V.S.A. § 901a(b).

In the present case, Section 901a means that the City, by conceding that the driver's actions were within the scope of his employment, has effectively conceded liability and is statutorily barred from asserting any defenses against indemnity or respondeat superior that it, as a municipality, might have raised against Plaintiff outside of Section 901a.[2] Therefore, if and

---

[2] By way of comparison, *Hudson v. Town of East Montpelier*, a pre-Section 901a case, illustrates how such claims once worked. 161 Vt. 168 (1993). The case involved a claim of negligence following an improper road repair that caused plaintiff's car to careen off the road. *Id*. at 169–70. Plaintiff sued the Town, the town's two insurance companies, the road foreman, and the road grader operator. *Id*. at 170. The Town and the insurance companies were dismissed after the court ruled that the claims fell outside the terms of the policy, but the road foreman and grader operator were found individually liable. *Id*. at 170, 179–80.

when this matter goes to a jury, any verdict in Plaintiff's favor concerning the driver's negligence will be a verdict against the City for which it will be wholly liable.

In this case, liability and responsibility for the verdict is a function of both the City's concession and the statute. If the Court were to allow Plaintiff's amendment, nothing in the present liability equation would change. The City would remain liable so long as the underlying negligence of the driver was proven, and it would not be negligent if the opposite was established. There is also no shift or alteration in the City's potential responsibility for any damages. To the extent the underlying negligence is proven, the City is responsible, and that does not change regardless of whether Plaintiff can or cannot prove a negligent supervision claim.[3]

While Plaintiff correctly notes that a negligent supervision claim has separate and additional elements, the test for futility of amendment under Rule 15 is not whether the two claims are identical, but whether the amendment would survive a motion to dismiss. *Vasseur v. State*, 2021 VT 53, ¶ 7. This in turn rests upon whether a negligent supervision claim is effectively subsumed by the statutory provisions of Section 901a. See *Loso v. Yankee Med., Inc.*, No. 2009–027, 2009 WL 3320269, at *1 (Vt. Oct. 8, 2009) (unpub. mem.) (finding a motion to amend was properly denied because negligent supervision claim was subsumed once employer admitted vicarious liability). The Court concludes in this case that such a claim cannot be sustained for the following reasons.

First, the statutory structure and plain language of Section 901a is intended to eliminate any distinction between employer and employee in the municipal liability context. Under Section 901a(b), a municipality is statutorily obligated to defend and indemnify its employee for any harm resulting from the employee's negligence arising from his or her employment. 24 V.S.A. § 901a(b). The statute expressly requires the lawsuit to name only the municipality as defendant, and the statute makes this the sole cause of action available. *Id*. In this respect, the legislature has eliminated the need for proving either vicarious or direct liability in municipal

---

[3] As the Vermont Supreme Court notes in *Civetti,* this is precisely the intent and purpose of 24 V.S.A. § 901a, which was enacted in response to a case strikingly similar to the present case where a town snowplow driver was found liable for negligence resulting from his plowing while the municipality was not. *Civetti*, 2020 VT 23, at ¶ 26 (citing *Morway v. Trombly*, 173 Vt. 266 (2001)).

circumstances and has put the onus on the municipality to defend and indemnify all such claims. It has also stripped the municipality of any municipal immunity or similar defenses. Given this language, the Court finds that the legislature effectively sought to eliminate the issues of vicarious and direct liability in this type of litigation and to make the municipality solely and directly responsible for all negligence committed by its employees, thereby subsuming the two theories of liability into one action brought directly against the municipality.

In this respect, allowing the subsumed direct liability claim to go forward would also create the strong potential for confusion and prejudice as the City would effectively be litigating two different roles. The first being City as named defendant standing in the shoes of driver, and the second being the City standing as its corporate self. The major distinction between the two being that the City in the second role would be entitled to present a municipal immunity defense. Given the requirements of Section 901a, and its provisions that the City be the only named Defendant, it would be all but impossible to keep these concepts separate.

Second, given the clear line of liability for the employee's actions and responsibility for any consequential damages, the theory of negligent supervision can only be seen as an alternative theory of liability subsumed by the first. As noted above, permitting the amendment does not change the City's liability or responsibility. *Haverly*, 169 Vt. at 357. Certainly, if the City did not concede that the driver had been acting in the scope of his employment or if there were portions of the claim that went beyond the driver's actions, then negligent supervision might be an appropriate claim. In the present case, however, there is no dispute that the central issue of liability concerns the driver and that Section 901a renders the City wholly liable and responsible for any judgment. Under such circumstances, trying to prove this additional source of responsibility and liability is effectively redundant and should fall away. Additionally, the Court has inherent discretion to dismiss a duplicative claim in the interest of judicial economy, and courts routinely do so. See, e.g., *Storman v. CA Alta Regl. Ctr.*, 221CV00380KJMACPS, 2021 WL 847785, at *2 (E.D. Cal. Mar. 5, 2021); *DTCC Data Repository (U.S.) LLC v. U.S. Commodity Futures Trading Commn.*, 25 F. Supp. 3d 9, 18 (D.D.C. 2014); *McGee v. D.C.*, 646 F. Supp. 2d 115, 121, 2009 WL 2568903 (D.D.C. 2009).

In this respect, it is important to note, that the sole difference between Plaintiff's Section 901a respondeat superior claim and her proposed negligent supervision claim is that Plaintiff

would have to prove that the City independently acted in a negligent manner in addition to the driver's negligence. While this is a different element, its proof would have no effect on the primary issue of the City's liability. Therefore, adding this count would not change the outcome of the present litigation. It might allow Plaintiff to present evidence of the City's allegedly negligent internal practices, but as noted above, such a claim would invoke municipal immunity issues and would not make the City's ultimate liability more or less likely.

In addition to these case-specific issues demonstrating futility, there is also an issue of prejudice. Plaintiff's complaint to date has fallen under Section 901a, which eliminates the issue of municipal immunity. Discovery is now closed. Amending the complaint to add a claim of negligent supervision, however, would revive these defenses but would deprive the City of the ability to conduct discovery consistent with these defenses and the ability to distinguish the City's actions in discovery. The prejudice here is substantial because the right to municipal immunity is neither straightforward, nor easily separated from the driver's negligence. See *Civetti*, 2020 VT 23, at ¶¶ 6–11 (discussing the governmental/proprietary distinction in municipal immunity). The distinction is not hypothetical as *Morway* indicates municipalities are generally immune from lawsuits involving governmental functions, such as snowplowing roads, and this immunity is separate and distinct from the immunities available to employees. *Morway v. Trombly*, 173 Vt. 266, 270–71 (2001).

At this late date, the Court finds that introducing a new theory of liability would effectively prejudice the City from developing and presenting a record through discovery that would allow the City to preserve and present this defense and make this distinction.

Finally, the Court finds that the primary reason for Plaintiff's amendment is to allow it to fully present evidence of how the City's allegedly negligent standards informed the driver's negligence. This issue appears to be more rhetorical and evidentiary than liability driven. In this respect, it would make sense to address it under the Rules of Evidence, particularly 402, 403, and 404. The germane issue, in this respect, revolves around identifying those facts which are relevant to explaining why the accident happened. If the driver was unaware of certain safety standards and protocols that all drivers should follow, then this evidence is relevant and likely admissible if relevant to the crash. If Plaintiff wants to put on evidence about whether the City adopted such standards internally, its admissibility would depend on whether the absence of

these standards correlated to the driver's negligence. In other words, the City draws no benefit from distinguishing its actions from the driver's because the driver's liability is the City's under Section 901a. So the fact that the City adopted, but driver did not follow, a particular safety standard is not relevant, but the City's lack of such a safety protocol might be relevant to establish and show the driver's lack of knowledge and awareness of the standard.

In this respect, the Court sees no harm to Plaintiff's ability to raise relevant factual issues about both the driver's actions and environment in which he worked for purposes of establishing negligence, which should in many respects encompass the issues raised in Plaintiff's brief without amendment.

For these reasons, the Court finds that the proposed amendment would create issues of futility and prejudice. *Colby v. Umbrella*, 2008 VT 20, ¶ 4. As such, the motion to amend at this time is **Denied.**

**ORDER**

Based on the foregoing, the motion to amend is **Denied.**

Electronically signed on 12/5/2025 2:02 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge