# Judith Hudson v. Town of East Montpelier, Cooleen Parker, Administratrix of the Estate of Robert Parker, and Michael Garand

[638 A.2d 561]

No. 91-341

Present: Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed November 29, 1993

*Robert G. Cain* and *Christopher J. McVeigh* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*Jeffry W. White* and *John Davis Buckley* of *Theriault & Joslin, P.C.*, Montpelier, for Defendants-Appellants.

**Johnson, J.** Two employees of the Town of East Montpelier, who were sued in their personal capacity for negligently repairing a town road, appeal from a jury verdict in favor of plaintiff. Although defendants claim several errors, the principal issue we must decide is whether the superior court correctly concluded that the doctrine of qualified official immunity did not shield the employees from liability under the circumstances of this case. We affirm the court's decision.

The relevant facts are not in dispute. In November 1986, at a town selectmen's meeting, East Montpelier Road Foreman Robert Parker was instructed to place gravel over a ledge protruding from a dirt road within the town. Parker was not told how much gravel to use, how to pack the gravel or cover the ledge, or how long to leave warning signs at the site. Approximately a week after the meeting, on the morning of November 13, Parker dumped two truckloads of gravel in a swath around the exposed ledge after placing temporary warning signs at both ends of the work site. Grader Operator Michael Garand then leveled the gravel and packed it by running the tires of the grader over it several times. Parker approved the job, picked up the temporary warnings signs, and left. Two to three hours after Parker and Garand left the site, plaintiff lost control of her

car when her front tires sank into the newly laid gravel. The car struck a tree, and plaintiff suffered multiple injuries.

Plaintiff filed suit against the Town of East Montpelier, the town's two insurance companies, and Parker and Garand. She elected to pursue the suit only against Parker and Garand in their personal capacity after the superior court ruled that the town's insurance policies excluded her claims from coverage. Defendants filed a motion for summary judgment, arguing that either the doctrine of official immunity or the town's sovereign immunity shielded them from liability. The court denied the motion, and the case proceeded to trial, where the jury assessed total damages at $135,000 and apportioned 70% of the fault to Parker, 24% to plaintiff, and 6% to Garand.

On appeal, defendants argue the court erred in concluding that they were not immune from suit. They also argue that the evidence does not support the jury's finding of negligence, and that the court abused its discretion by (1) refusing to allow the introduction of evidence showing that plaintiff was operating an unregistered vehicle, (2) allowing an unqualified expert to testify on ultimate conclusions of law, (3) allowing testimony of other motorists who had lost control of their cars at the same spot that afternoon, and (4) failing to examine the jurors individually, after learning that one of them had asked if the jurors could be taken to the scene of the accident, to determine whether they had discussed the case among themselves before the close of evidence.

## I.

### A.

Defendants first argue that Parker's acts were discretionary in nature and thus immune under the doctrine of qualified official immunity. Much of their argument is an attack on what they consider to be the superior court's flawed "bright-line" test that once a discretionary decision is made, in this case by selectmen, all subsequent acts are ministerial as a matter of law. We disagree with their characterization of the court's opinion. In any event, we need not adopt the court's rationale in affirming its conclusion. *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) (correct judgment may be affirmed even though grounds stated in support of it are erroneous). Rather

than dissect the superior court's decision, we need determine only whether it correctly ruled that the doctrine of qualified official immunity did not shield defendants from liability. We conclude that the court's ruling was correct.

In *Libercent v. Aldrich*, 149 Vt. 76, 81, 539 A.2d 981, 984 (1987), we stated the general rule that lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority. We also noted that this Court had applied the doctrine of qualified official immunity in prior cases involving the liability of municipal officers. *Id.* at 80, 539 A.2d at 983; see, e.g., *Ferraro v. Earle*, 105 Vt. 243, 246, 164 A. 886, 887 (1933) (municipal officer is personally liable for injuries caused by officer's negligence in performance of ministerial duties); *Daniels v. Hathaway*, 65 Vt. 247, 254–55, 26 A. 970, 972–73 (1892) (town selectmen are not personally liable for injury resulting from defect in town highway because of performance of discretionary duties).

While, at times, we have defined the words discretionary-decisional and ministerial-operational in literal terms, we have also recognized, as have other courts and commentators, that these words are merely "formalistic labels" provided for conclusions reached after consideration of all relevant factors. *Libercent*, 149 Vt. at 81, 539 A.2d at 984; see Restatement (Second) of Torts § 895D, at 416–17 (1979) (rather than look at dictionary definition of word discretionary, courts must weigh numerous factors to determine whether immunity is appropriate); 4 E. McQuillin, The Law of Municipal Corporations § 12.208, at 165 (3d ed. 1992) (whether public officer's acts are discretionary or ministerial must be determined after weighing factors such as nature of officer's duties, extent to which acts involve policymaking, and consequences of withholding immunity); W. Keeton, Prosser & Keeton on the Law of Torts § 132, at 1062 (5th ed. 1984) (courts have been unable to define distinction between discretionary and ministerial acts; conclusion that act is discretionary is often result of assessing various factors). Accordingly, we have not relied exclusively on a literal definition of these words. See *Levinsky v. Diamond*, 151 Vt. 178, 191, 559 A.2d 1073, 1082 (1989) (discretionary-decisional versus ministerial-operational analysis "provides no definitive test, for min-

isterial-operational acts may still entail some minor decision-making responsibilities"); see also Comment, *The Discretionary Function Exception to Government Tort Liability*, 61 Marq. L. Rev. 163, 168–69 (1977) (courts have not employed literal definition to interpret discretionary function exception since definitional approach was rejected by California Supreme Court in *Johnson v. State*, 447 P.2d 352, 357, 73 Cal. Rptr. 240, 245 (1968)).

Rather than rely on the dictionary to understand what is meant by the words discretionary and ministerial in the context of sovereign or official immunity, we must examine the purposes behind the immunity. *Id.* at 358–59, 73 Cal. Rptr. at 245–46 (determination whether particular activity is discretionary or ministerial should be guided by purpose of immunity); *Peavler v. Monroe Cty. Bd. of Comm'rs*, 528 N.E.2d 40, 45 (Ind. 1988); see *Marshall v. Town of Brattleboro*, 121 Vt. 417, 424, 160 A.2d 762, 767 (1960) (duty of this Court is to test issue of municipal immunity in light of purpose of doctrine).

Most courts and commentators have recognized that the doctrine of qualified official immunity serves primarily to shield government employees from exposure to personal tort liability that would (1) hamper or deter those employees from vigorously discharging their duties in a prompt and decisive manner, and (2) unfairly subject employees who have a duty to exercise discretion regarding matters of public policy to the judgment of those acting within a judicial system that is ill-suited to assess the full scope of factors involved in such decisionmaking. See Restatement, *supra*, § 895D, at 412. Regarding the first rationale, one prominent commentator states:

> Some official conduct is more vulnerable to attack than other conduct. Some official conduct especially needs a free range of choice that is not hampered by concerns over potential personal liability. Other official conduct is neither especially vulnerable to complaint nor in need of especially unhampered decision-making. One who repairs the street can do a good job without provoking a citizen suit; the prosecuting attorney cannot do a good job without provoking anger and, sooner or later, a citizen suit. Good operation of the prosecutor's office does adversely affect people (usually criminals, but, unavoidably, others as well); good operation

of the street repair department does not harm people, but on the contrary makes their travel safer. Both kinds of work are socially desirable, but one kind, since it is intended to adversely affect others and does so, is more likely to generate claims than the other. The range of free choice needed in the two kinds of work is also quite different. The importance of the officer's freedom of decision and the likelihood of unjust suit for honest decision-making are factors to be considered in deciding whether official conduct is "discretionary" and immune or "ministerial" and unprotected.

Prosser & Keeton, *supra*, § 132, at 1065 (footnote omitted).

The second rationale underscores the vital public interest in the free and independent judgment of employees charged with the duty of making public policy decisions. This rationale is related to the doctrine of separation of powers, which is most often cited as a rationale for sovereign immunity, but is also an important factor in determining whether official immunity is appropriate in a given situation. See *Smith v. Cooper*, 475 P.2d 78, 88 (Or. 1970) (in suit against employees of state highway commission, "most decisive factor . . . is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury"); Restatement, *supra*, § 895D, at 416 (among factors courts consider in determining whether officers' acts are discretionary is "extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment . . . on the conduct of a coordinate branch of government"); Prosser & Keeton, *supra*, § 132, at 1065 (most significant factor regarding discretionary immunity is doctrine of separation of powers).[1] Courts will generally not hold legisla-

---

[1] At least one jurisdiction has stated that the definition of discretionary is different depending on whether it is applied to sovereign or official immunity because the purpose and scope of the two types of immunity differ. See *Holmquist v. State*, 425 N.W.2d 230, 233 n.1 (Minn. 1988); *Nusbaum v. Blue Earth Cty.*, 422 N.W.2d 713, 718 n.4 (Minn. 1988). According to the Minnesota Supreme Court, discretion in the context of an officer's immunity is broader than the type of discretion referred to in the discretionary function exception to sovereign immunity. *Nusbaum*, 422 N.W.2d at 718 n.4; cf. Ber-

tive or executive employees personally liable for policy decisions that are based on factors such as availability or allocation of public resources or public acceptance because traditional tort standards do not provide an adequate basis for evaluating these types of decisions in coordinate branches of government. See Prosser & Keeton, *supra*, § 132, at 1065.

For example, in *Smith* the Oregon Supreme Court held that state highway employees were immune from liability for negligence in various acts concerning the designing and planning of a highway because their actions were dependent upon considerations such as the funds available for the project, the amount of land available, the potential loss of agricultural land that would result from the project, the amount of traffic contemplated, and the evaluation of technical data regarding safety. 475 P.2d at 90; cf. *Grant v. Davis*, 537 So. 2d 7, 9 (Ala. 1988) (state highway employees who had discretion to rank road repair projects based on available resources were immune from suit alleging they failed to properly inspect and repair shoulder of road). This Court has employed similar reasoning in finding town selectmen immune from suits claiming injury as the result of negligent street repair or operation of construction equipment. See *Bates v. Horner*, 65 Vt. 471, 476–77, 27 A. 134, 136 (1893) (village trustees not liable where no evidence showed that they operated, or supervised operation of, stone crusher that caused injury); *Daniels*, 65 Vt. at 254–55, 26 A. at 972–73 (selectmen not liable for injury caused by failure to repair road where selectmen did not actually repair road or supervise repair of road, and where performance of their duties required

---

mann, *Integrating Governmental and Officer Tort Liability*, 77 Colum. L. Rev. 1175, 1182 (1977) (tort claims statutes have generally not indicated whether word "discretionary" has same meaning for purposes of both governmental and officer immunity). But cf. *Stevenson v. State Dep't of Transp.*, 619 P.2d 247, 250 (Or. 1980) (in Oregon, California, and federal tort claims statutes word discretionary "appears to have the same meaning when applied to governmental immunity as it does when applied to public employees' immunity"). We need not determine whether the word "discretionary" is precisely coextensive when applied to the two types of immunity, but, as indicated in our discussion in the text, many of the purposes of official immunity also apply to sovereign immunity, including concerns over the separation of powers of coordinate branches of government.

exercise of discretion regarding available funds and priority of projects).

In short, whether the act of a government employee is discretionary so as to make the employee immune from personal tort liability requires a case-by-case examination of the nature of the act to determine whether the employee's action involved the type of policy considerations not suitable for review under the judicial system's traditional tort standards.

Parker's actions in the present case fail to meet this test, and therefore are not immune from suit. Although Parker had to exercise some discretion in determining how best to cover the ledge and whether or how long to leave warning signs at the site, there is no suggestion that his decisions required a weighing of the type of public policy considerations that would warrant shielding him from liability. See Restatement, *supra*, § 895D, at 413, 418 (official immunity extends to lower administrative officers when they make "a decision by weighing the policies for and against it"; courts consider repair of highways to be ministerial under ordinary circumstances); *Ham v. Los Angeles Cty.*, 189 P. 462, 468 (Cal. 1920) ("it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail"). In short, this is not a case requiring a balancing of potential benefits and risks to the public, where Parker had the "'right to be wrong.'" *Libercent*, 149 Vt. at 82, 539 A.2d at 984 (quoting *Williams v. City of Detroit*, 111 N.W.2d 1, 25 (Mich. 1961) (Edwards, J., dissenting)).

## B.

Defendants contend, however, that it violates public policy to impose personal liability on town employees in situations where the town is immune and the employees acted solely to discharge a duty owed by the town to the public in general rather than to specific individuals. Defendants ask this Court to limit our holding in *Marshall* that "the immunities as to negligent acts of municipalities do not attach to their employees" to situations where an employee violates a "special" duty owed to a particular individual or class of individuals. See 121 Vt. at 424,

160 A.2d at 767. In effect, defendants ask us to adopt the "public duty doctrine" and its "special relationship" exception, which protect government units or employees from liability unless the person seeking recovery can show that the duty breached was a duty owed to that person in particular, rather than to the public at large.[2]

We decline to adopt this doctrine, which in recent years has been rejected or abolished by most courts considering it. *Leake v. Cain*, 720 P.2d 152, 158 (Colo. 1986) (growing number of courts have rejected rule); *Jean W. v. Commonwealth*, 610 N.E.2d 305, 312 (Mass. 1993) ("the trend has been to abolish the rule"); Prosser & Keeton, *supra*, § 131, at 1049 (public duty doctrine has been eroded by recent decisions rejecting or limiting it). Courts have rejected or abolished the doctrine because it is confusing and leads to inequitable, unpredictable, and irreconcilable results. *Leake*, 720 P.2d at 159; *Jean W.*, 610 N.E.2d at 313. These courts have stressed that concerns over excessive government or public employee liability are baseless considering the limitations on liability afforded by conventional tort principles, various types of official immunity, or exceptions to waivers of sovereign immunity. *Leake*, 720 P.2d at 160; *Jean W.*, 610 N.E.2d at 313–14.

Courts have noted that, although the doctrine is couched in terms of duty rather than liability, in effect, it resurrects the governmental immunities that have been abrogated or limited by most jurisdictions over the last thirty-five years. *Leake*, 720 P.2d at 160 (effect of doctrine is identical to that of sovereign immunity, which precludes liability based on public status of party rather than nature of act); *Jean W.*, 610 N.E.2d at 313 (doctrine has no vitality in wake of tort claims act); cf. *Gordon v. Bridgeport Housing Auth.*, 544 A.2d 1185, 1197 (Conn. 1988) (in refusing to abolish public duty doctrine, court noted that legislature had not abrogated governmental immunity); *Catone v.*

---

[2] In its traditional form, the public duty doctrine shields public employees from liability only where the plaintiff sustained injury as the result of the employee's failure to act to prevent a situation or condition not originally caused by the employee. *Jean W. v. Commonwealth*, 610 N.E.2d 305, 316 (Mass. 1993) (O'Connor, J., concurring); see W. Keeton, Prosser & Keeton on the Law of Torts § 131, at 1049 (5th ed. 1984). Even if we were to accept the doctrine in this form, and we do not, defendants would not prevail.

*Medberry*, 555 A.2d 328, 334 (R.I. 1989) (refusing to apply public duty doctrine where government employee engages in activity normally undertaken by private individual, such as driving vehicle). But see *Beaver v. Gosney*, 825 S.W.2d 870, 873 (Mo. Ct. App. 1992) (declining to abolish public duty doctrine; abrogation of sovereign immunity did not impliedly abrogate doctrine).

We recognize that this final rationale for rejecting the doctrine—that acceptance or retention of the doctrine would be inconsistent with the abrogation of sovereign immunity implicit in the adoption of a tort claims act—is not entirely applicable here because this case involves municipal employees. Our Legislature has neither abrogated sovereign immunity with respect to municipalities in our tort claims act, see 12 V.S.A. § 5601 ("state of Vermont" is liable for wrongful act of "employee of the state"), nor required municipalities to defend or indemnify all municipal employees in every circumstance. See 24 V.S.A. § 901 (suits against municipal officers must be brought against municipalities; municipalities must assume legal fees incurred by officers sued for their nonmalicious acts committed while performing official duties); 24 V.S.A. § 1313 (incorporated villages "may" defend and indemnify public officers against suits for injuries caused by officers discharging official duties); cf. 3 V.S.A. § 1101 (obligation of state to defend state employees); 12 V.S.A. § 5602 (when state employee causes damage or injury while acting within scope of employment, exclusive right of action lies against state); 12 V.S.A. § 5606 (obligation of state to indemnify state employees where state law is incapable of establishing employee immunity).

Nevertheless, municipal immunity has been limited in Vermont by the governmental-proprietary distinction,[3] and by 29

---

[3] The governmental-proprietary distinction was the first attempt by many courts, including this one, to alleviate the harsh results of municipal immunity, which had long been under attack. See Restatement (Second) of Torts § 895C, at 408–09 (1979). Most courts eventually abolished municipal immunity. See *id.* at 409–10. Vermont is one of a minority of states that retains the governmental-proprietary distinction, which has been criticized by courts and commentators for many years as unworkable. See *Indian Towing Co. v. United States*, 350 U.S. 61, 65 (1955) (refusing to enter nongovernmental-

V.S.A. § 1403, which waives a municipality's sovereign immunity to the extent of its insurance coverage. Moreover, conventional tort principles and the doctrine of qualified official immunity offer some protection to municipal employees.

█  In the absence of the public duty doctrine or a statute specifically limiting liability, a municipal employee who commits

---

governmental "quagmire," which "has long plagued the law of municipal corporations," under Federal Tort Claims Act because of "the inevitable chaos when courts try to apply a rule of law that is inherently unsound"); *Spencer v. General Hospital of District of Columbia*, 425 F.2d 479, 481 (D.C. Cir. 1969) (distinction has "lost its vitality as an accurate or adequate rationale" for immunity); 18 E. McQuillin, The Law of Municipal Corporations § 53.24.10, at 315 (3d ed. 1993) (doctrine is considered "unsound and unworkable" because attempts to fit particular conduct into one of the two categories has led to inconsistent, artificial, and inequitable results); Prosser & Keeton, *supra*, § 131, at 1054 (distinction "is basically unworkable"); Annotation, *Municipal Immunity from Liability for Torts*, 60 A.L.R.2d 1198, 1203 (1958) (attempts to apply distinction "have led to many confusing and contradictory decisions, evoking extensive and bitter criticism from both the courts and legal writers").

This Court, too, has at times expressed dissatisfaction with the governmental-proprietary distinction. See, e.g., *Vermont Gas Systems, Inc. v. City of Burlington*, 153 Vt. 210, 215, 571 A.2d 45, 48 (1989) (distinction rejected in context of utility relocation law); *Town of Stockbridge v. State Hwy. Bd.*, 125 Vt. 366, 369, 216 A.2d 44, 46 (1965) (distinction "is not clearly defined," basis of distinction "is difficult to state," and no established rule exists for determination of what belongs to which class); *Marshall v. Town of Brattleboro*, 121 Vt. 417, 424, 160 A.2d 762, 767 (1960) (application of distinction "sometimes leads to divergent consequences in cases factually similar"). The arbitrariness of the doctrine is exemplified by our prior cases involving the repair of roads and sewers. Although most jurisdictions retaining the distinction have classified the repair of both roads and sewers as proprietary in nature, see 18 *McQuillin*, *supra*, § 53.41, at 349; Prosser & Keeton, *supra*, § 131, at 1054, this Court has held that the maintenance of streets and sidewalks is governmental, while the maintenance of sewers is proprietary. *Dugan v. City of Burlington*, 135 Vt. 303, 304-05, 375 A.2d 991, 992 (1977). Thus, as the law now stands, a person who drives a car into an excavation on a town street may sue the town if the hole is the result of repair to a sewer or water line, *Kelly v. Town of Brattleboro*, 161 Vt. 566, 567, 641 A.2d 345, 346 (1993) (water line repairs not distinguishable from sewer line repair); *Fuller v. City of Rutland*, 122 Vt. 284, 287, 171 A.2d 58, 59-60 (1961) (sewer line repair is proprietary), but not if the hole is the result of repair to the street.

Because the only remaining defendants in this case are the two town employees in their personal capacity, we need not consider the continuing viability of the governmental-proprietary distinction.

a tortious act is personally liable to the injured person, even though the employee is engaged in a governmental function and the municipality is exempt under the doctrine of sovereign immunity. 4 McQuillin, *supra*, § 12.211.10, at 281; see *Marshall*, 121 Vt. at 424, 160 A.2d at 767. Indeed, municipal employees are generally liable for injuries resulting from their negligent repair of streets, even though the municipality is exempted from liability. 4 McQuillin, *supra*, § 12.213, at 288.

We decline to adopt the confusing and inconsistent public duty doctrine as a means of limiting the liability of government employees who are already protected to some extent by the doctrine of qualified official immunity, or as a means of addressing the discrepancy between the statutory protection afforded to state and municipal employees in Vermont. If the Legislature determines that no municipal employees required to engage in work-related activities affecting the safety of many people should be held personally liable for their negligence in undertaking ministerial tasks within the scope of their employment, it may require all municipalities to indemnify all of their employees or to purchase insurance in order to protect their employees from tort judgments, or it may declare suits against municpalities the exclusive remedy for those injured by municipal employees acting within the scope of their employment. See Prosser & Keeton, *supra*, § 132, at 1068–69. As the law now stands, however, the trial court correctly ruled that neither the doctrine of qualified official immunity nor the immunity of the town shielded defendant Parker from liability from suit for his negligence in supervising the repair of the road.

## II.

■ Defendants also argue that the court should have granted them a directed verdict because there was no evidence from which the jury could have reasonably concluded that they were negligent. We disagree. There was ample evidence that defendants placed excessive loose gravel on an extremely dangerous section of the road without leaving signs warning motorists of the condition of the road. The gravel was placed on a section of the road immediately following a blind curve at the brow of a hill. According to plaintiff and two other witnesses who traveled the road that afternoon, the gravel was so deep

and loose that their cars fishtailed as they arrived at that point in the road. The investigating police officer confirmed that the gravel was deep and loose. Plaintiff's expert testified that the loose gravel caused the accident. Despite the fact that the gravel was left at a section of the road that was not visible until the last moment, there were no warning signs left at the site. This was more than enough evidence to justify the jury's verdict. See *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 239, 552 A.2d 1201, 1201–02 (1988) ("A motion for a directed verdict cannot be granted where there is any evidence fairly and reasonably tending to justify a verdict in the nonmoving party's favor.").

Garand argues that there is no evidence that he was negligent because the exposed ledge could not be removed by grading the road, and he had no responsibility as far as placing warning signs. Again, we disagree. The road was left in a dangerous condition without warning to motorists. Although Parker had the final say as to whether the gravel was sufficiently compacted, Garand did operate the equipment and, as he testified, could have questioned Parker's orders. The jury was reasonably justified in attributing 6% of the fault to Garand.

## III.

Defendants' remaining four claims of error can be disposed of in short order. First, defendants argue that plaintiff's expert was not qualified to testify regarding the placement of warning signs, and that his testimony on that point drew an improper legal conclusion. Because these specific objections were not raised before the trial court, we need not consider them here. See *Deyo v. Kinley*, 152 Vt. 196, 200, 565 A.2d 1286, 1289 (1989) (issue not preserved on appeal unless aggrieved party makes specific objection at trial clearly stating grounds for objection); *Massucco v. Vermont College Corp.*, 127 Vt. 254, 261, 247 A.2d 63, 67 (1968) (where plaintiff failed to object at trial to expert's qualifications or testimony, issues not preserved on appeal).

Second, relying on *Coates v. Town of Canaan*, 51 Vt. 131, 139 (1878), defendants argue that the court should not have allowed testimony by two motorists regarding the condition of the road the afternoon of the accident because plaintiff failed to

establish that the road's condition on each of those occasions was substantially the same as at the time the accident occurred. The *Coates* case does not support defendants' argument. There, the inadmissible testimony depicted the condition of a different part of the road two days earlier that was caused by a different defect from the one that caused the accident. *Id.* at 138–39. The Court held that the plaintiff had no right to offer testimony on defects that did not cause the accident or on the condition of the road at times other than the accident unless the testimony would aid the jury in determining the road's condition at the time of the accident. *Id.* at 139; cf. *Mobbs v. Central Vermont Ry.*, 155 Vt. 210, 226, 583 A.2d 566, 575 (1990) (trial court did not abuse discretion in refusing to allow testimony of accidents at railroad crossings other than site of accident). Here, the witnesses testified as to the condition of the exact same section of the road shortly before, and only a few hours after, the accident occurred. We find no abuse of discretion in admitting the testimony.

Third, defendants contend that the court ignored *Hanley v. Town of Poultney*, 100 Vt. 172, 175, 135 A. 713, 714 (1927), by refusing to allow evidence that plaintiff was driving an unregistered vehicle. We need not address the continuing viability of *Hanley*, which ruled that one who is injured while operating an unregistered vehicle on a public highway cannot collect damages from a town for its breach of a statutory duty, because this case is controlled by *Gilman v. Central Vermont Ry.*, 93 Vt. 340, 347, 107 A. 122, 124–25 (1919). *Gilman* held that one who is injured while operating an unregistered vehicle on a public highway may recover damages for negligence as long as the illegal act is not the proximate cause of the accident. Here, there is no suggestion that the unregistered status of the car was a factor in causing the accident. The court acted well within its discretion in refusing to admit the evidence as unduly prejudicial.

Finally, defendants argue that the court committed reversible error by declining to examine the jurors individually after one of them asked, before the close of evidence, if it would

be possible for the jurors to be taken to the scene of the accident. Defendants contend that because the juror spoke for the jurors in general, the court was required to examine all the jurors to determine if, in fact, they had improperly discussed the case among themselves before the close of evidence. We find no abuse of discretion. The court's examination of the court officer who responded to the juror's question revealed that only one juror asked about the site visit, that the juror gave no explanation for the request, and that the officer had not heard any of the jurors discussing the evidence among themselves. The lone juror's request, in and of itself, did not require the court to examine the jurors individually.

*Affirmed.*