*Evans v. Cabot*, No. 657-11-14 Wncv (Tomasi, J., May 27, 2016).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Washington Unit | Docket No. 657-11-14 Wncv |

Marie Evans,
  Plaintiff,

  v.

Town of Cabot,
  Defendant.

### Opinion and Order on the Town's Motion for Summary Judgment

On January 14, 2013, the Town of Cabot "road crew" was removing brush and tree limbs from the southbound side of South Walden Road in Cabot. The Town's entire road crew consisted of three workers, all of whom were involved in the work. One was operating a "loader" – a heavy machine used primarily to push debris over the embankment -- which projected somewhat into the traveled portion of the southbound lane of the road. Plaintiff Marie Evans was driving southbound on the road at an otherwise reasonable speed, did not see the loader, and collided with it at full speed, without braking or taking other evasive measures. She was severely injured. In this case, she seeks to establish the Town's direct or indirect liability for negligence, the failure to warn or an insufficient warning that the road was obstructed by the loader. Disclaiming any kind of liability, the Town has filed a motion for summary judgment.

1. *Summary Judgment Standard*

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, party fails to make showing sufficient to establish essential element of the case on which the party will bear burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers*, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or similar evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991).

2. *Background*

A review of the manner by which this case has unfolded thus far is helpful to an understanding of Ms. Evans' claim(s) and the Town's motion. In the complaint, Ms. Evans named two defendants, the Town and Mr. Cleo Keith Johnson, the operator of the loader. She alleged that Mr. Johnson was operating the loader in an unsafe fashion. She also alleged generally that both Mr. Johnson and the Town failed to provide adequate notice to the traveling public, and her in particular, of whatever hazards the road crew's work may have presented, and did not comply

2

with any applicable requirements of the Manual on Uniform Traffic Control Devices (MUTCD). 23 V.S.A. § 1025 (adopting the MUTCD as "the standards for all traffic control signs, signals, and markings within the State"). She asserted that the Town had direct liability for the MUTCD compliance and had indirect liability for any negligence on the part of Mr. Johnson.

Defendants then filed a motion to dismiss, arguing that Ms. Evans' direct claims against Mr. Johnson are barred by 24 V.S.A. § 901a. Subject to some limitations not relevant here, that section precludes direct actions against municipal employees for, among other things, personal injuries. *Id.* § 901a(b). It requires that such claims be brought against the municipality, which may raise any defense that would have been available to the employee, including individual immunity defenses such as qualified immunity; but which may not raise any defense that would not have been available to the employee, including "municipal sovereign immunity." *Id.* § 901a(c).

Ms. Evans did not oppose the request to dismiss the direct claim against Mr. Johnson—she stipulated to it. At that point in the case, the parties had changed, but not the claims, which remained as vague in the record as they appeared in the complaint. The competing narratives of the parties starts to take shape in the deposition transcripts of the road crew members; the State trooper who arrived at the scene and was responsible for the investigation; Ms. Evans; and her MUTCD expert.

The testimony of the road crew members is to the following effect. They arrived at South Walden Road to do what they anticipated would be a quick (hour or less) job of removing brush and dead trees or limbs that might otherwise become an obstacle in the traveled portion of the road. Signs warning drivers of the work were put up in either direction by the foreman, Walter Churchill, at locations that he believed would safely warn drivers of the work ahead. Doing so was his responsibility alone and not Mr. Johnson's, who had no involvement in it.

At the time of the accident, the loader was as far off the traveled portion of the road as possible without going over the embankment but still projected somewhat into the road. All available lights ("four-ways" and hazards) were on. All three workers were wearing fluorescent safety vests. Mr. Churchill's role was to cut branches. Mr. Johnson's was to operate the loader as needed. A third worker, David Pike, was helping to throw debris for which the loader was not needed over the embankment by hand.

The loader was not changing location at the time of the accident, although it may have been pushing some debris over the embankment. Mr. Pike was walking to or from the truck in which he had arrived. He was in the middle of the northbound lane as Ms. Evans drove past him at, he estimates, 40–45 miles per hour directly towards the loader. She had not slowed down as other vehicles coming from her direction had. As she passed by Mr. Pike at full speed, he tried to get her attention but she did not react. He then watched as she continued to drive down the road and crash directly into the loader. The stretch of road she traveled leading

4

up to the collision was a long straightaway. The loader was in plain view. She never slowed down or attempted to avoid it. Mr. Pike never saw brake lights.

It was a clear, sunny day. The police report reflects that when Ms. Evans was interviewed at the scene, she reported that the sun had obscured her view and she had placed one of her hands in front of her eyes to block it. The officer concluded: "The primary cause of this collision is M. Evans failed [to] recognize[ the loader] parked in the roadway. A contributing factor in this collision may have [been] the sun which could have obstructed M. Evans['] view."

Ms. Evans' version of events, *as revealed at her deposition*, is considerably different. According to her, from the direction she was traveling, there was no sign warning of work ahead. Mr. Pike was not in the middle of the road attempting to get her attention. She was not blinded by the sun with her hand in front of her eyes. The loader was not plainly visible, or visible at all, as she drove down the straightaway, and likely was hidden by the darkness of shadows. Just before the moment of impact, however, it lunged into the road and unexpectedly crashed into her.

According to Ms. Evans' expert, Richard Wobby, Jr., the work zone was not set up in a manner that was safe and was not compliant with the MUTCD.[1] He concludes that if any of the steps he suggests had been taken, the accident could have been avoided; and if all of them had been taken, it would have been avoided.

---

[1] Mr. Wobby, in his report, focuses almost exclusively on the technical issues of MUTCD compliance rather than the more general question of safety of the work zone.

3. *The Summary Judgment Filings*

The Town seeks summary judgment as follows: (1) the Town has governmental immunity as against any direct claim of negligence against itself; (2) as a factual matter, there is no legally cognizable indirect claim against the Town due to Mr. Johnson's conduct; (3) the Court should pre-emptively deny any motion to amend asserting a claim based on Mr. Churchill's conduct because qualified immunity necessarily protects against any such claim and, in any event, he did not violate any mandatory provision of the MUTCD; and (4) in all events, as a matter of law, Ms. Evans' negligence exceeded any negligence of the Town or any of its agents pursuant to 12 V.S.A. § 1036 (comparative negligence). In support of its motion, the Town submitted a statement of undisputed facts that generally corresponds to its version of events as set forth above.

In opposition to summary judgment, Ms. Evans focuses almost exclusively on whether any mandatory provision of the MUTCD was violated and whether the Town retains its governmental immunity in the circumstances of this case. She supported her opposition with her own statement of undisputed facts that is focused on showing a violation of the MUTCD. It generally is not calculated to show that the facts—the basic narrative of events on the day of the accident as portrayed by the Town—are disputed. In other words, she appears to have abandoned any negligence claim based on allegations that Mr. Johnson erratically drove the loader into the road and crashed into her. Her claim is predicated on whether the work

zone was set up to provide reasonable notice of a dangerous obstacle (the loader) in the road to the driving public—a basic failure to warn claim.

4.      *The role of MUTCD in this case*

The parties' heavy focus on whether a provision of the MUTCD was violated in this case may have confused matters. Ms. Evans, and to some extent the Town, has approached this case as though the proof or lack of proof of a violation of the MUTCD controls the questions of liability and immunity.

As for liability, 23 V.S.A. § 1025 (adopting the MUTCD) presumably is a "safety statute" to the extent it prescribes particular conduct. *See Dalmer v. State*, 174 Vt. 157, 164 (2002) (noting the adoption of Restatement (Second) of Torts § 286). In Vermont, the violation of a safety statute does not prove negligence. Rather, it gives rise to a rebuttable presumption of negligence (duty and breach). *Cooper v. Burnor*, 170 Vt. 583, 585 (1999). "When the [opposing] party produces evidence that fairly and reasonably tends to support a finding that the presumed fact does not exist, the presumption disappears." *Cooper*, 170 Vt. at 585. In that event, the presumption is a "bursting bubble." *Id*. at 586 (Dooley, J., dissenting). Here, even if Ms. Evans can prove that the MUTCD was violated, the Town clearly has evidence that, regardless, its agents were not negligent because they gave travelers reasonable warning of any hazard caused by their conduct. Any presumption of negligence, thus, disappears. The alleged violation of the safety statute still may help to prove negligence, but the question turns to the larger one of

7

negligence (and causation), rather than simply whether a safety statute was violated.

Also, even if Plaintiff can prove negligence, the Town would still have the opportunity to establish that the Town is entitled to qualified immunity regarding any indirect liability that might attach to it as a result of a claim against a Town employee. *See* 24 V.S.A. § 901a(c); *Hudson v. Town of East Montpelier*, 161 Vt. 168, 171 (1993).

5. *Municipal Sovereign Immunity*

The Town argues that municipal sovereign immunity bars any direct claim of negligence against it. Its argument is based on the governmental–proprietary dichotomy that, in Vermont, still is used to determine the breadth of a municipality's sovereign immunity. *See Hillerby v. Town of Colchester*, 167 Vt. 270, 272 (1997) ("Traditionally, courts have held municipalities liable only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental."). A town's maintenance of its highways is a governmental function for which the town retains immunity. *McMurphy v. State*, 171 Vt. 9, 14 n.2 (2000) ("This Court has long held that the maintenance of highways is a governmental function.").

Ms. Evans argues, however, that the circumstances in this case somehow make it distinguishable from those cases in which towns are properly found to have retained immunity in the course of maintaining their highways because here the Town abused its discretion or failed to exercise it altogether (by failing to

8

implement the MUTCD) and that the Vermont Supreme Court permits precisely these types of claims directly against towns, citing *Hudson*.

Ms. Evans' direct claim against the Town plainly arises out of the maintenance of a highway by the Town. That maintenance activity is a governmental function and thus governmental immunity attaches. There is no exception to that immunity because discretion was abused, withheld, or exercised in some manner that led to harm, and Ms. Evans points to no authority whatsoever for that proposition.

Additionally, *Hudson* is completely irrelevant on this issue. There, the Court permitted a negligence claim directly against the town employees for leaving a road in a dangerous condition without taking any precautions. While the plaintiff initially had sued the town as well, she dropped that claim and proceeded against the employees only. *See id.* at 170. The principal question presented was whether the employees had qualified official immunity, not whether the town had municipal sovereign immunity.

Ms. Evans' claim directly against the Town is barred by municipal sovereign immunity.

6.      *Any Claim Predicated on Mr. Johnson's Conduct*

On this summary judgment record, Ms. Evans has dropped any claim that Mr. Johnson negligently drove the loader into the road in a negligent fashion and crashed into her. Her claim is based solely on whether the work zone violated the MUTCD and whether it was set up in a way that provided reasonable notice to

9

drivers of the danger ahead. The problem with that claim is that it is undisputed that Mr. Johnson did the only things he could do in that regard: (1) he turned on all available warning lights on the loader; (2) he operated it in a non-negligent fashion; and (3) he wore his fluorescent safety vest.

It is insufficient for Plaintiff simply to allege negligence of some kind regarding the work zone and then attribute it to Mr. Johnson because he was at the scene. At a minimum, such allegations provide an insufficient response to a motion for summary judgment. On this record, it is undisputed that Mr. Johnson had no authority to place warning signs in the road, to decide whether someone should be a flagger, or to ensure compliance with the MUTCD. In short, there no longer is any viable negligence claim against him and, therefore, no viable claim against the Town based on his alleged conduct.

7. *The Non-Existent Motion to Amend, Qualified Immunity, and Comparative Negligence*

It is undisputed that the only worker at the site with the authority to take whatever steps were reasonable to provide warnings to the public was Mr. Churchill, the foreman, and he did assume that duty. Recognizing that Ms. Evans' direct claim against the Town and indirect claim based on Mr. Johnson's conduct are defective, and that no claim was pleaded based on Mr. Churchill's conduct, the Town asks the Court to pre-emptively strike any motion to amend to add such a claim. The Town argues that such a claim would fail because Mr. Churchill's conduct is protected by qualified official immunity. It also asserts that Ms. Evans

10

was so obviously more negligent than any agent of the Town that her lurking claim would necessarily fail.

In response to these arguments, the Court concludes that Ms. Evans has *not* filed a motion to amend. The Court declines to issue an advisory opinion regarding a motion that does not exist.

That result is especially compelling in light of the circumstances of this case and the Town's qualified official immunity argument. To properly analyze qualified immunity, the Court must be able to scrutinize the sort of discretion that is in dispute. *See Searles v. Agency of Transp.*, 171 Vt. 562, 564 (2000) (the MUTCD "is more of a guidebook for the installation of signs than a 'specific prescription'" (citation omitted)); *Hudson,* 161 Vt. at 175 ("case-by-case examination" is necessary to determine whether the "decisions required a weighing of the type of public policy considerations").

Here, for example, to assess whether immunity would apply the Court must examine the particular facts and events that occurred in connection with the safety measures taken at the work zone. The Court may not undertake that analysis in a vacuum, without the necessary facts. On this record, which so heavily focuses on MUTCD compliance and not on negligence itself, the Court simply declines to speculate on the details of any motion to amend, if one is ever filed. Nor can the Court make an assessment of any prejudice that might counsel against allowing such an amendment.

11

For the same reason, the Court declines to speculate as to whether Ms. Evans was, as a matter of law, more negligent than "any" Town actor.  The Court notes, however, that such determinations are, typically, matters solely within the province of the finder of fact.

Order

For the foregoing reasons, the Town's motion for summary judgment is granted, and the case is dismissed.

Dated this __ day of May 2016 at Montpelier, Vermont.


_____
Timothy B. Tomasi,
Superior Court Judge

12