Vermont Superior Court
Filed 08/08/24
Orleans Unit

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-00461

| Lianne Kramer, et al v. Town of Derby |
|---|

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment  (Motion: 3)
Filer:      Brian P. Monaghan
Filed Date: April 11, 2024

The motion is DENIED IN PART.

The present motion for summary judgment hinges upon the scope and nature of Plaintiffs Lianne and James Kramer claims.  While summary judgment is not appropriate for Plaintiffs' claims, Defendant Town of Derby's motion does raise a valid question of what is permissible for the scope of Plaintiffs' claims under 24 V.S.A. § 901a.  To this end, the Court denies summary judgment to the Town, but it does rule that the scope of Plaintiffs' claims must be limited to the scope and nature of claims available to Plaintiffs under their present pleadings, within the limited exception of 24 V.S.A. § 901a, and consistent with individual employee negligence under Sections 323 and 324A of the Restatement (Second) of Torts and Vermont common law.

### Background Facts

The facts of this case are largely undisputed.  On or about April 2, 2019, employees for the Town of Derby, specifically, Jason Nye, performed maintenance work along the Salem Derby Road, a public highway that runs in front of the Kramers' property and home.  The maintenance work consisted of removing gravel and other material that had accumulated in existing culverts alongside Salem Road that were causing the culvert to back up and flood portions of the Kramers' property. The Kramers among others had complained about the culvert, and the work done was, in part, in response to these complaints.

The Kramers' driveway bifurcates the culvert, under which a drainage pipe runs to keep the culvert connected.  The culvert on either side of the driveway has steep slopes on all sides between

the bottom of the culvert and the top of the bank. The slope between the top of the driveway and the bottom of the culvert is a nearly vertical slope that is necessarily steep given that the width of the driveway and the length of the drainage pipe underneath are nearly equal.[1] There is no room in this layout for a tapered or gradual slope as such a configuration would bury the drainage pipe.

On the same day that the Town employees performed the maintenance work, Ms. Kramer walked to the end of her driveway to get her mail. When she reached the mailbox in an area at the edge of the driveway next to the culvert, the ground gave way. Ms. Kramer fell into the culvert, injuring her leg.

The Kramers have alleged that town employees were negligent in performing this work because they left an unstable vertical surface at the edge of the driveway and did not mark it off with flagging or other material. The Kramers have not alleged that the culvert was improperly designed or negligently installed by the Town of Derby, and they have not alleged that the Town was negligent in ordering maintenance on the culvert. Plaintiffs' claims do not include any cause of action directly against the Town for any of its municipal functions or authority over the roadway. Instead, the Kramers' claims are limited to the negligence that they alleged the Town's employees committed while performing the culvert maintenance work.[2]

The Town has filed a motion for summary judgment raising several arguments concerning Plaintiff's evidence of negligence, specifically whether the Kramers have provided sufficient evidence to establish the applicable duty of care and the breach of said duty, as well as challenging whether such breach caused the Kramers' injuries and the applicable standard of municipal immunity.

## Legal Analysis

When looking at the facts of the present claim, the Court must begin with the various entities and potential claims of immunity. In this case, Ms. Kramer is the lead plaintiff who has

---

[1] As shown in the Town road standards, newer culverts are designed with longer drainage pipes to permit a more gradual slope transition from the top of a driveway to the bottom of the culvert. Given that the Town employees on April 2, 2018 were not responsible for re-designing or re-installing the existing culvert, this difference between current installation standards and the pre-existing culvert has no legally or factual significant to the present claims, which rests entirely on the question of whether Nye was negligent in performing the culvert maintenance work.

[2] The Kramers' complaint has only two claims. The first is for negligence by Derby employees, and the second is for loss of consortium.

raised a claim of negligence resulting from her injuries as she was the individual who fell from the driveway to the bottom of the culvert. Mr. Kramer's claim is limited to loss of consortium, which is a derivative claim that is dependent on Ms. Kramer's primary claims. *Derosia v. Book Press, In c.*, 148 Vt. 217, 220 (1987).

*Indemnification under 24 V.S.A. § 901a*

The Defendant in this case is ostensibly the Town of Derby, but as Plaintiffs' opposition and original complaint make clear, the action is not against the Town per se, but it is against Jason Nye, a town employee. As an employee of the Town, Plaintiffs have abided by the requirement of 24 V.S.A. § 901a and brought this action against Jason Nye in the name of the Town.

In this respect, Section 901a is an indemnification statute. Under its provisions a claim against a municipal employee, acting within the scope of his or her employment "lies against the municipality that employed the employee at the time of the act or omission" and no action can be maintained against the individual employee. 24 V.S.A. § 901a(b). This statutory provision alters the common law, which would normally allow a plaintiff in a negligence action to name both the employer and employee. It does not alter the nature of the claim, or the available defenses. As Section 901a(c) states: "the municipality may assert all defenses available to the municipal employee, and the municipality shall waive any defense not available to the municipal employee, including municipal sovereign immunity." 24 V.S.A. § 901a(b). This limitation means that a town named as a defendant in a 901a action is effectively standing in the shoes of the municipal employee. *Civetti v. Turner*, 2020 VT 23, ¶¶ 23–26. It also serves as an express waiver of municipal immunity. Id.

Given the mechanics of Section 901a, there is always room in a personal injury action involving a municipal defendant for confusion. Has the town been named as a municipal corporation, against which it may raise defenses of municipal immunity, or has it been named for statutory indemnification purposes in the stead of a municipal employee, in which case, it may only assert the more limited qualified municipal employee immunity defenses? In this case, Plaintiff's initial pleadings, expert disclosure reports, and briefs make clear that the only defendant in this case is the Town and solely in its capacity as indemnifier for its employee Jason Nye.

The negligence analysis in this case flows from this Section 901a framework. The claim of negligence in this case is necessarily limited to the specific work that Nye performed on April 2, 2019, where he removed dirt and gravel that had accumulated at the bottom of an existing culvert. The standard of care is defined, in part, by the Restatement (Second) of Torts § 323, which provides that a person undertaking the performance of services for another must still perform those services in a manner that does not increase the risk of harm or create harm in another who relied upon the services rendered. *Shulman v. Concord Gen. Mut. Ins. Co.*, 618 F.Supp.3d 165, 173 (D.Vt. 2022) (collecting Vermont Supreme Court cases in which Section 323 liability was applied to a Vermont municipality or the State).[3] As the court in *Shulman* notes, "[t]he Vermont Supreme Court has consistently applied Section 323 of the Restatement (Second) of Torts in recognizing the duty under negligence law of "one who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things." Id. While the Town seeks to characterize Nye's work as more generalized, the facts indicate that the work was performed because the Kramers complained and because the backed-up culvert was flooding portions of their property. To this extent, there is sufficient evidence that the Kramers were beneficiaries of the Nye's work on behalf of the Town either as direct beneficiaries or as foreseeable third parties, and the Kramers were well within the circle of protected individuals under Sections 323 and 324A of the Restatement (Second) of Torts.[4]

The Kramers allege that a breach of this duty occurred because Jason Nye did not ensure the integrity of the soil after the work was completed; failed to warn the Kramers that the edge of the driveway/culvert was unstable; and did not install a barrier or other flagging to prevent the Kramers

---

[3] The cases cited by *Shulman* actually implement Restatement (Second) of Torts § 324A and not Section 323. See, e.g., *Kennery v. State*, 2011 VT 121, ¶¶ 12–20. This distinction, however, is more semantics than substance. Section 323 and 324A articulate the same duty that a person must perform services in a non-negligent manner. Restatement (Second) of Torts § 324A, cmt.a. In Section 323, the duty is described in terms of the person who received the benefit of the service, and Section 324A in terms of foreseeable third parties affected the actions. In this case, while Kramers arguable qualify under Section 323, they would, even under the Town's analysis, qualify for the same duty of care under Section 324A. See *Wallace v. Dean*, 3 So.3d 1035, 1050–52 (Fla. 2009) (cited with approval by *Kennery*, 2011 VT 121, at ¶ 19)

[4] As noted below, the duty articulated by Sections 323 and 324A is only a codification of existing Vermont common law that has long recognized a cause of negligence arising from the action of municipal employees to the extent that they carry out the implementation of a government act in a negligent manner. See, e.g., *Hudson v. Town of East Montpelier*, 161 Vt. 168 (1993); see also *Wallace*, 3 So.3d at 1050.

or anyone else from walking to the unstable edge.[5]  Plaintiff also alleges that as a result of these breaches Ms. Kramer lacked the warning or information to avoid the edge of the bank and fell when the newly unstable bank gave way to her weight while she was walking to her mailbox.

Whether or not Jason Nye acted in a reasonable manner is ultimately a question of fact for the jury.  *LaFaso v. LaFaso*, 126 Vt. 90, 96 (1966).  The facts indicate that Nye excavated material out of an existing culvert, but it is not clear from the record if the work that he did was consistent with the standard for clearing culverts, if there was any indication that the ground around the excavation was unstable, and what protocol or standards a reasonable highway worker would follow in performing such maintenance, particularly if they had an indication that the work had loosened soil at the top of the bank.  Similarly, it is unclear whether the Kramers had knowledge or awareness of the work done and whether Ms. Kramer ignored an open and obvious danger by not watching where she was walking when she went out to the mailbox.  These are ultimately findings and factual decisions that a jury must make.  Id.

*Common Law Sources of Duty for Municipal Employees*

At the same time, the scope of Plaintiff's claims and issues raised under those claims do not touch upon the larger responsibilities of the Town under 19 V.S.A. § 304.  As the Town notes in its motion, the Town had a duty to clear and maintain the culverts and remove the excess gravel that had accumulated.  It did not have a duty to reconstruct or alter the nature of the culvert from how it existed, and any dangers that accumulated from the nature of the culvert and its construction are not at issue in this case because such decisions have not been included in Plaintiffs' complaint and lie beyond the scope and authority of Jason Nye when he was performing the maintenance work on April 2, 2018.

In this respect, the Vermont Supreme Court's decision in *Hudson v. Town of East Montpelier*, is instructive.  161 Vt. 168 (1993).  In that case, the selectboard of the town directed the town's road foreman to place gravel over a ledge protruding from a dirt road.  Id. at 169.  The foreman with his

---

[5] Plaintiffs cite to several out of state cases in support of this proposition, which the Court does not find relevant as they primarily discuss a municipalities' responsibility and liability in creating, repairing, and maintaining ditches.  In this case, the only question is whether Jason Nye breached the standard of care that a reasonable municipal road employee should exercise in the act of clearing out a drainage ditch.  Nevertheless, the issues raised by Plaintiffs fit within the general duty of care as articulated under Sections 323 and 324A of the Restatement as well as Vermont common law liability.  See, e.g., *Hudson*, 161 Vt. at 179–80.

assistant added two truckloads for gravel to the road, tamped, and graded it. Id. The crew then put warning signs up. Id. Two hours later plaintiff drove over the road and lost control of her car when the tires sunk into the gravel, veered off the road, and struck a tree. Id. at 169–70. Plaintiff filed suit against the Town, the road foreman, and the assistant. Plaintiff dismissed her claims against the Town after initial motion practice, and she only pursued her claims against the road crew members.[6] Id. at 170.

In affirming the jury's verdict of liability and damages against the road crew employees, the Vermont Supreme Court noted several times that the negligence at issue was not the fact that the road crew was instructed to add gravel or even the fact that they added gravel, it **was the way the gravel was added**, and the dangerous situation that resulted and for which the crew posted insufficient warning. Id. at 179–80 (emphasis added). As the Court noted, "municipal employees are generally liable for injuries resulting from their negligent repair of streets, even though the municipality is exempted from liability." Id. at 179 (citing 4 E. MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12.213, at 288 (3d ed. 1992)).[7]

The import of *Hudson* is that while a Town may be immune from liability because the nature of the activity is a municipal action that enjoy municipal immunity, individual employees do not necessarily enjoy the same type of immunity if they are negligent in the performance of their job. The negligence in *Hudson* was not in the fact that the Town put gravel on the road or conducted a repair, but rather in the way the gravel was added to the road. Id. at 179–80.

In the present case, the fact that the culvert existed, the fact that it was designed in a manner inconsistent with current installation practices, the fact that the design may have created some of the issues leading to the fall are not at issue or before the Court. These are municipal issues and decisions, which were not part of Jason Nye's job on April 2d. What is at issue is the limited question of whether Jason Nye's work on the culvert was done in a way that created the unsafe

---

[6] This case appears to have pre-dated 24 V.S.A. § 901a's provisions as the employees were named individually, but all of the defendants were represented by single counsel. Id. at 169.

[7] This section of McQuillin's treatise appears to have been updated to Section 12:281, but the same language appears: "Officers whose duty it is to keep the streets in repair, and having ample means for this purpose, are liable to any person specially injured as a result of their negligent performance of that duty, or a failure to perform it,1 even though the municipality has been exempted from liability." 4 E. MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12.281; see also Id. at § 12.280 (noting that this type of liability applies to officers and employees).

condition. This distinction is important because it creates three possible sources of causation for the present case. Based on the evidence as presently presented, a reasonable jury could find that Ms. Kramer's fall was the result of either Jason Nye's negligent work; the inherent design and overall condition of the culvert and its banks; and Ms. Kramer's own failure to take care while walking near the edge of the culvert. While this decision is ultimately an issue for the jury to decide, only one of the three theories results in liability for the Town.[8] *Estate of Sumner v. Dept. of Social and Rehabilitative Services*, 162 Vt. 628, 629 (1994) (mem.) ("Ordinarily, proximate cause is a jury issue unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way.") (internal citation omitted).

*Limitations on the Scope of Plaintiffs' Claims*

In its motion for summary judgment, the Town compares the present case to a Renee Magritte painting of a pipe that says, "this is not a pipe."[9] While the Town's interpretation of the Magritte is misplaced, its concerns about the present case are not. Magritte's point is that a painting is not reality. Despite painting a realistic looking pipe, the painting is, in fact, not a pipe, it is representation of a pipe. S. GABLIK, MAGRITTE 106 ("In just the same way, the image of a pipe is not the same thing as a real pipe."). In the present case, the Kramers have purposefully framed their claim to focus on the negligence of only town employees. This appears to have been a strategic choice to avoid municipal immunity issues, but it also means that the scope of the claim and issues that can go before a jury are necessarily limited. The Town's argument is that by blending other responsibilities of the Town to construct, maintain, and manage the culvert, the Kramers are effectively smuggling a municipal liability claim through the back door of Section 901a's limited waiver of immunity.

As discussed in the Court's earlier decision on the Town's Motion in Limine (issued July 30, 2024), the Kramers' expert has expressed certain opinions and used certain sources to define and articulate a standard of care that partially crosses over from the duty of care that employees, like

---

[8] To the extent that the Plaintiffs would seek to hold the Town directly liable, the act of maintaining a town highway and the related obligations are governmental functions, and the Town is immune from liability in this area. *McMurphy v. State*, 171 Vt. 9, 14 (2000).

[9] The Belgian painter Renee Magritte used the image of the pipe and the words "ceci n'ést pas une pipe" in several works. SUZI GABLIK, MAGRITTE Plates 109–22 (1972). The first was a painting dates to 1929 and its title has been translated as *The Treachery of Images* or *The Use of Words I*. Id.

Nye, would have had within their limited scope of work on April 2, 2018, and into the broader municipal obligations of the Town to construct, generally maintain, and manage culverts. Such larger obligations cannot be reasonable assigned to Nye for the April 2d incident, and the Court has limited the use of the expert's opinion on those grounds.

In this respect, the Kramers' claims may be more appropriately likened to Magritte's painting entitled the *Human Condition* where he depicts a window from inside a room but has placed a canvas in front of the window painted with the exact landscape that the canvas is covering to create an illusion where the painting blends almost seamlessly into the landscape behind it. Id. at Plate 61. In this respect, the Kramers' claims are limited to the canvas defined by their complaint, specifically, Nye's actions or inactions on April 2, 2018. However logically connected such claims may be to the larger landscape of responsibilities carried by the Town, the claims cannot involve these larger portions of what makes up the construction, on-going maintenance, and management of the culvert, except to draw contrast to the more limited duties of Nye. In other words, the issues in this case that can go before the jury for consideration of liability are the actions or inactions of Jason Nye. To the extent that the causation of Ms. Kramer's fall is attributable to the design, construction, or maintenance of the culvert, it is outside the canvas of Plaintiffs' claims, and it would be the basis for a defendant's verdict.

### *The Limits of the Present Action*

In its reply brief, the Town outlines at substantial length the long and well-established history of municipal sovereign immunity and immunity for the work of maintaining town highways. See, e.g., *Graham v. Town of Duxbury*, 173 Vt. 498, 499 (2001) (mem.) (holding that maintaining a town highway and its culvert system is a governmental function that is subject to municipal sovereign immunity).[10] The Court does not understand Plaintiffs to dispute this history of municipal sovereign immunity or its application to either town highways or culverts. Instead, Plaintiffs seek to carve out the very limited exception created under Section 901a, which allows a cause of action to proceed against a town for the negligence of an employee in the implementation of such work as they are charged with doing.

---

[10] While the Town references the doctrine of qualified municipal immunity that applies to discretionary acts of town employees, the Court finds no specific analysis or argument that would support its application in this case to the work that Jason Nye performed. *Civetti*, 2020 VT 23, at ¶¶ 34–37. Upon review, the Court finds that the nature of the work that Nye performed sounds more ministerial than discretionary. *Hudson*, 161 Vt. at 171–75.

The basis and standard for such a claim can be found under Sections 323 and 324A of the Restatement (Second) of Torts as well as Vermont common law. *Hudson*, 161 Vt. at 179–80. In this case, Plaintiffs have articulated a factual claim that falls within this narrow band. While many of the facts of this case are not disputed, the factual import is disputed in a manner that may only be resolved by a jury. *LaFaso*, 126 Vt. at 96. For these reasons, summary judgment is inappropriate at this time.

At the same time, the issues raised by the Town do suggest a need for a limitation instruction or similar clarification to the jury depending on the nature of the evidence produced at trial. To the extent that a jury finds that the proximate cause of Ms. Kramer's fall is attributable to either Ms. Kramer's failure to act with due care or the larger design and overall maintenance of the culvert, the Town would be entitled to a defendant's verdict.

## ORDER

Based on the foregoing, the Town of Derby's motion for summary judgment is **Denied.** The Town may seek jury instruction or an additional motion in limine at the close of discovery consistent with this decision.

Electronically signed on 8/7/2024 6:09 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge